ALEXANDER P. NEDDO v. LOUISA NEDDO.

No. 8056.

1. DIVORCE—*Abandonment—Statutory Period.* In an action by the husband against the wife for a divorce, wherein she filed a cross-petition against him for a divorce on the ground of abandonment for more than one year, *held,* that the period of abandonment does not terminate with the commencement of the plaintiff's action, but may extend to the filing of the defendant's cross-petition.

2. MARRIAGE SETTLEMENT, *When not Upheld.* A marriage settlement which is unreasonable, inequitable or against public policy

will not be upheld; and where, by its terms, the contract invites and encourages a separation as a source of pecuniary profit to either party, it is void.

3. ALIMONY, *not Excessive.* Upon the conclusions of fact, in the absence of the evidence, it does not appear that the allowance for alimony is excessive.

*Error from Shawnee District Court.*

ON May 4, 1888, the plaintiff filed his petition against the defendant for a divorce. On August 28, following, the defendant filed an answer and cross-petition. Subsequently, at different times, the plaintiff filed three amended petitions, the last one being filed December 12, 1889. On June 30, 1890, the defendant filed her answer and cross-petition, to which the plaintiff replied, and on July 19, 1890, a trial was commenced, but the case was not decided until September 8, 1891, when conclusions of fact and of law were filed, and judgment was rendered in favor of the defendant against the plaintiff for a divorce and for alimony. The plaintiff moved for judgment on the findings, and also for a new trial, but these motions were overruled. The case-made does not contain any of the pleadings prior to the third amended petition, nor any recital of their contents, and it contains the evidence only upon the matter of abandonment of the defendant by the plaintiff, on which ground the divorce was granted. The third amended petition is very long and contains many charges, including adultery, and the plaintiff set up a certain ante-nuptial contract, and asked that the same be enforced in granting a divorce to him by barring her of any claim to alimony out of his property, the body of said contract being as follows :

" Whereas, A. P. Neddo, of the county of Shawnee, and Mrs. Lou Frisbie, of the county of Pottawatomie,

both of the state of Kansas, are about to enter into the marriage relation, and in consideration whereof they have made and entered into this agreement, this 31st day of July, 1873 : Witnesseth, that the parties above named have agreed to become husband and wife, and live together as such during their natural lives. But it is further agreed, that if said parties should fail to live together amicably as husband and wife, and they should separate, either by abandonment or by a divorce being granted to either or both of said parties, then the property, lands and tenements held and owned by either of said parties previous to such marriage, or that have been acquired by either during such marriage, shall be and remain the property, lands and tenements of the party who held and owned the same previous to such marriage or acquired during said marriage ; and the parties hereby release and forever quitclaim any right, title or interest acquired by reason of said marriage in the property, lands and tenements of the other, and also waive any claim to alimony or other rights acquired or liabilities incurred by reason of said marriage, in the event of such separation or divorce ; and the said parties hereby consent that either can make such disposition of the property held, owned and acquired by deed, will, or otherwise, as to him or her may seem best.''

The answer and cross-petition of the defendant contained allegations of ill treatment and abandonment for more than one year, upon which the defendant prayed for a divorce and for alimony. Some other facts appear in the opinion, filed March 7, 1896.

*S. B. Isenhart*, for plaintiff in error.

*Douthitt & Wolfe*, for defendant in error.

The opinion of the court was delivered by

MARTIN, C. J. : I. The court found that the allegations of the plaintiff's third amended petition were not supported by the evidence, and that the plaintiff

abandoned the defendant April 2, 1887, without just cause or provocation. The evidence shows that at said time the plaintiff left the defendant, and caused a notice to be published in a newspaper at St. Mary's, which circulated also at Rossville, (near which latter place the parties resided,) warning all persons not to give the defendant credit, or sell anything to her on plaintiff's account, and that he would not pay any debts contracted by her; but it appears that the parties resided together afterward for some months prior to the institution of the action for a divorce by the plaintiff. And thus the question arises whether the period of abandonment of the defendant by the plaintiff ends with the commencement of the plaintiff's action, or extends to the filing of her cross-petition for divorce for that cause. It is provided by section 642 of the code of civil procedure that "the defendant, in his or her answer, may allege a cause for a divorce against the plaintiff, and may have the same relief thereupon as he or she would be entitled to for a like cause if he or she were plaintiff." As a general rule, pleadings subsequent to the petition relate back to the commencement of the action, (*Hillyer v. Douglass*, ante, p. 97, 42 Pac. Rep. 329, 330, and cases cited,) unless it be as to matters subsequently arising, which should generally be set forth in supplemental pleadings; but this rule does not obtain where the defendant has a separate and distinct cause of action against the plaintiff, which is set up by way of cross-petition. (*Toby v. Allen*, 3 Kan. 399, 412, 413; *Lanoue v. McKinnon*, 19 id. 408, 413; *Richards v. Tarr*, 42 id. 547, 550; *Water Co. v. Hill*, 46 id. 145, 149.) And it seems to be the purpose of said section 642 to confer upon the defendant in a divorce suit, by means of a cross-petition, the same affirmative rights that he or she

would be entitled to if commencing an independent action; and as the abandonment took place at some time before the commencement of the action and had continued up to the filing of the cross-petition, more than two years afterward, we must hold that the court did not err in granting to the defendant a divorce on the ground of abandonment for more than one year.

II. The parties were married August 1, 1873, being the next day after the antenuptial contract was signed. The plaintiff was then about 40 years of age, and the defendant near 37. She had one son and two daughters by a former marriage, aged, respectively, 11, 15 and 17 years. He had 280 acres of land in a body in Rossville township, worth $55 an acre, and about $2,000 worth of personal property. Her property was of the value of about $50, and she had some expectation of receiving a share of an estate in the east; but this was without substantial foundation, and was never realized. Just after the marriage the defendant and her children went with the plaintiff and resided upon said land, two of the 80-acre tracts being occupied as a homestead; and the children remained there as members of the family, the son for about two years, the elder daughter about 18 months, and the younger daughter three or four years.

Contracts or settlements in consideration of marriage, which are reasonable, equitable, and not against public policy, are recognized as valid by the statutes of this state and the decisions of this court. (Gen. Stat. 1889, ¶ ¶ 3166, 3757; *Hafer v. Hafer,* 33 Kan. 449.) In the case cited the marriage settlement was upheld as just and reasonable. In that case, before the marriage, the husband was well advanced

in years, and was the father of seven children by a former marriage, while the wife was a maiden lady, and she agreed to accept a child's part of his estate instead of the usual widow's share; and they lived together until his death. In this case the husband was in the prime of life and without children, while the wife had three, and no provision whatever was made for her support, and the plaintiff abandoned her without just cause. The contracts in the two cases are alike only in that each, if carried out, would defeat the homestead interest of the wife; but this court held in the *Hafer* case that the contract was inoperative as to the homestead. In addition to the foregoing defects of the antenuptial contract in this case, we hold that it contains provisions contrary to public policy, and, being set up in the plaintiff's petition, we must take notice of them. They seem to invite disagreement and abandonment, and make the same productive of profit to the party having the greater amount of property. The law of marriage, as well as the express contract of the parties, required them to live together as husband and wife during their natural lives; but, by the violation of that law and that contract, the party having the bulk of the property might derive pecuniary profit. No marriage settlement ought to be upheld which invites and encourages a violation of the marriage vow, and this contract is of that character. By the abandonment of the wife in violation of the law of marriage, it was in effect stipulated that the guilty party should be relieved from the duty of support which that law enjoins. A contract which incites, by the hope of financial profit, the separation of married people should not be enforced. The court properly

held that the contract of July 31, 1873, was "unreasonable, inequitable, and against public policy, and therefore void in law and equity."

III. Great complaint is made as to the amount of alimony allowed. At the time of the separation the plaintiff took away from the farm about $1,000 worth of personal property, and sold the same. He also collected the rents of his farm during the litigation, amounting to about $1,100 annually. He was formerly a member of the Pottawatomie tribe of Indians, and an allotment of 320 acres of land in the Indian territory was made to him March 30, 1888, subject to the approval of the secretary of the interior, but it had not yet been approved at the time of the trial. The court found that this Indian land was worth $10 per acre. The defendant had been allowed, as alimony and expense money, during the pendency of the suit, $500 for herself, $70 to pay witnesses, and $100 on attorneys' fees; and the court, in the final decree, allowed her $200 additional alimony, and $900 additional attorneys' fees, and set apart to her 120 acres of the homestead tract, whereon the principal dwelling-house and orchard are situated. And it was ordered that the tract so set apart to her should be relieved by the plaintiff from the lien of certain instruments, as follows, namely: A mortgage for $650 on the entire 280 acres, given by the parties August 17, 1873; a mortgage of $1,500 on the entire farm, executed by them February 1, 1876, and a deed to William Neddo, brother of the plaintiff, for the two 80 acre tracts constituting the homestead, executed in March, 1880, for an expressed consideration of $6,000, but which was given as a security for a loan to the plaintiff, the exact amount of which is not found by the court. And it was decreed that, on failure of the

plaintiff to clear the defendant's land so set apart to her from the incumbrances of said instruments, she should be allowed to set up any defense thereto which the plaintiff might have against the same. It is contended by counsel for plaintiff that it is unjust to compel him to pay all this indebtedness, amounting to $8,150, besides some interest; but the evidence is not in the record, and it may have tended to throw doubt upon the continued existence of these incumbrances to their full amount, all of them being quite old at the time of the trial; and, in the absence of the evidence, we are unable to say that the order of the court was unjust or inequitable.

The judgment must be affirmed.

All the Justices concurring.