No. 29,791.

FLORA SANGER, *Appellant*, v. DAVID SANGER, ANNA GRUBE, JAMES SANGER, HENRY SANGER, PHILLIP SANGER, WILLIAM SANGER, ANDREW SANGER and WESLEY SANGER, *Appellees*.

(296 Pac. 855.)

Opinion filed March 7, 1931.

*E. S. Rice, W. S. Rice*, both of Smith Center, and *J. L. McPheely*, of Minden, Neb., for the appellant.

*C. P. Anderbery*, of Minden, Neb., and *Leon Samuelson*, of Franklin, Neb., for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an action for the partition of farm land. The sole question is, What share of the property has plaintiff? She claims a one-half interest in the property. The trial court found she had a one-fourth interest, and she has appealed.

There is no serious controversy over the facts, which may be stated thus: John H. Sanger, at the time of his death in June, 1929, and for many years prior thereto, was a resident of Franklin county, Nebraska. He was the father of eight children by his first wife, who died in 1918. In June, 1921, he married Flora Johnson, who survived him, and who is the plaintiff and appellant in this case. At the time of his death he owned real and personal property of a value in excess of $75,000, all of which was situated in Nebraska, except the real property sought to be partitioned in this action. While his first wife was living he executed a will, but that is of no importance in this case, for his surviving widow elected to take under the law. Shortly before his marriage to the appellant herein he and she executed an antenuptial contract and agreement. At that time all of

his property was situated in Nebraska. The Kansas land was later acquired by exchanging some Nebraska real property for it and by purchase. The antenuptial contract contained a provision by which John H. Sanger released and quitclaimed any and all interest which he might have in the property of his wife growing out of the marriage relation, and then provided:

"It is further agreed by both parties hereto, that if the said John H. Sanger and the said Flora Johnson consummate the said marriage, and if the said Flora Johnson shall live with the said John H. Sanger as his true wife, as long as they both shall live, giving him the proper care and attention of any true wife, she the said Flora Johnson, if she survives him, shall receive from his estate upon his death, her legal share of his estate, such as is allowed under the statutes of the state of Nebraska to widows where the husband dies intestate.

"If, however, the said Flora Johnson shall fail to live with the said John H. Sanger after the said marriage, for any cause, or shall fail to be a good and true wife, or shall fail to perform her duties as such to the time of his death, then, and in that case, the said Flora Johnson hereby agrees that she shall not receive under any conditions, or claim from the said John H. Sanger, or his estate to exceed the sum of two thousand 00/100 dollars, which sum shall be paid at the time she fails to comply with said conditions and shall leave the said John H. Sanger."

It is agreed that John H. Sanger and plaintiff were residents of Nebraska prior to their marriage and at the time of entering into the antenuptial contract, and that they continued to reside in Nebraska to the time of the death of John H. Sanger, and that they lived together harmoniously as husband and wife. It is further agreed, in view of the fact that John H. Sanger left surviving him more than two children by his former wife, that the plaintiff, under the statutes of Nebraska (Gen. Stat. 1922, § 1220) would inherit one-fourth of his property, and it was admitted that the statutes would apply so far as the property in the state of Nebraska is concerned.

Appellant argues that the antenuptial contract is by its terms against public policy and void. In support of this view she cites the provisions by which John H. Sanger agreed that if she lived with him until his death she would receive the share the law of Nebraska gives her, but if she did not live with him until his death "for any cause," then she should receive only $2,000. It is argued that this invites disagreement and abandonment, such as was condemned by this court construing the antenuptial contract before it in *Neddo v. Neddo,* 56 Kan. 507, 44 Pac. 1. We note, first, there was

. no abandonment in this case, or failure to perform marital duties, hence the provision in the contract as to the sum the wife should have in such a case never has had facts upon which to operate, and under the situation now presented the contract should not be held void for that reason, even if that provision were against public policy. (*Bibelhausen v. Bibelhausen,* 159 Wis. 365.) But, passing that view, we think the contract before us is not open to the objection that it invites disagreement and separation. In view of the value of the estate, which did not change materially during the marriage of the parties, it was greatly to the financial advantage of the wife that there should be no separation. Hence it cannot be said that the provisions of the contract referred to tend to invite or promote abandonment or separation.

Appellant's principal point, however, is that the contract cannot and does not affect the share of the surviving wife in property situated in some state other than Nebraska. It is the general rule, of course, that the devolution of title to real property depends upon the law of the state in which the real property is situated. The law of Kansas gives to the surviving widow one-half, irrespective of the number of children, and this is the share which plaintiff should have in the property in question unless the provisions of the antenuptial contract limit her to a smaller share. It is the well-settled law generally, and of this state in particular, that antenuptial agreements, equitably and fairly made, are valid and enforceable. (*Hafer v. Hafer,* 33 Kan. 449, 6 Pac. 537; *Matney v. Linn,* 59 Kan. 613, 54 Pac. 668; *Gordon v. Munn,* 87 Kan. 624, 125 Pac. 1; *Burns v. Spiker,* 109 Kan. 22, 202 Pac. 370; *Hoard v. Jones,* 119 Kan. 138, 237 Pac. 888; 13 R. C. L. 1012.) But to bar the right of inheritance antenuptial contracts should clearly provide therefor. (*Rouse v. Rouse,* 76 Kan. 311, 91 Pac. 45; *Eberhart v. Rath,* 89 Kan. 329, 131 Pac. 604; *Getter v. Getter,* 118 Kan. 150, 233 Pac. 1016; *Bemarkt v. Prouty,* 132 Kan. 228, 294 Pac. 890.)

Examining this contract with these authorities in mind, we note, by the terms of it, that plaintiff relinquishes and renounces all marital claims, including that of survivorship, which were then present or to accrue, and of whatever kind, to any property possessed by John H. Sanger, "wherever situated," or that he might afterwards become possessed of from any source. After this sweeping relinquishment and renunciation, the instrument provides if she survives him she

"shall receive from his estate upon his death, her legal share of his estate, such as is allowed under the statutes of the state of Nebraska to widows where the husband dies intestate."

It is agreed that the share necessarily referred to by the quotation last made is one-fourth. The terms of the contract are broad enough to include all property then owned by John H. Sanger, or which he might thereafter acquire from any source, and wherever situated. In view of the number of his children by a former wife, that the present plaintiff was retaining all of her own property in any event, that in the event of the death of John H. Sanger she should have one-fourth of his property of the value of about $18,000, there appears to be nothing unreasonable in the provision made for her by this contract. Indeed, it is not argued or contended that the contract, construed under the laws of Nebraska, giving her one-fourth of the estate, is inequitable or unreasonable as to her. The parties evidently were familiar with the laws of Nebraska and knew what share of the property would be left to her in the event of his death. They were willing to agree with respect to the laws of Nebraska and that her share would be computed in accordance with the laws of that state. The language of the contract clearly indicates that they did so. There is no reason why this court should set it aside, or make a new contract for them.

From what has been said it necessarily follows that the judgment of the court below must be affirmed. It is so ordered.