No. 36,404

ARTHUR S. FINCHAM, *Appellant*, v. FRANCES MARIE FINCHAM, *Appellee* and *Cross-appellant*.

(165 P. 2d 209)

Opinion filed January 26, 1946.

*W. D. Jochems,* of Wichita, argued the cause, and *George Barrett,* of Pratt, was on the briefs for the appellant.

*John Madden, Jr.,* of Wichita, and *Paul R. Wunsch,* of Kingman, argued the cause for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action for divorce and for a full settlement of all claims of defendant, the wife, in accordance with a certain provision of an antenuptial contract pertaining to a separation of the parties.

The grounds alleged for a divorce were defendant's extreme cruelty and gross neglect of duty. Plaintiff tendered to defendant in court the sum of $2,000, that being the amount specified in the settlement provision of the contract in the event of a separation of the parties for any cause.

The defendant contested the divorce and by cross petition sought cancellation of the entire antenuptial contract on the grounds it was contrary to public policy and was otherwise unenforceable for various reasons to be stated later. The district court refused plaintiff a divorce and struck down the settlement provision of the contract on the ground it was unreasonable and unjust, violated public policy and was void. In other respects the contract was sustained. Judgment was also rendered for the separate support and maintenance of the wife over the objections of plaintiff. Both parties filed motions for a new trial, which were overruled. Plaintiff has appealed from those portions of the judgment which denied him a

divorce, which held the separation paragraph of the contract void, from the order allowing an amendment of defendant's cross petition after the court had filed its findings of fact, from the judgment for support and maintenance and from the order overruling his motion for a new trial. Defendant has cross-appealed from that portion of the judgment which upheld any part of the antenuptial contract, contending the contract was not fairly and understandingly made, and from the order overruling her motion for a new trial.

We shall begin with a consideration of the primary appeal of the plaintiff and shall continue to refer to the parties as plaintiff and defendant. While counsel for plaintiff argue that, in their opinion, plaintiff was entitled to a divorce, they also concede that in view of the conflicting testimony the court was vested with a wide discretion in determining whether it would grant a divorce. In other words, they do not argue that specification of error. We, therefore, shall regard it as having been abandoned. Under these circumstances it will serve no useful purpose to narrate the evidence pertaining to the alleged grounds for divorce.

A brief narrative of some facts will, however, be helpful on other aspects of the appeal. Plaintiff was a businessman sixty-five years of age at the time of the marriage at Albuquerque, N. M., on June 23, 1941. He is worth approximately $150,000 to $160,000. His property consisted mostly of lands. His annual income ranged between $10,000 and $12,000. His home was in Pratt, Kan. He had four adult children by a former marriage. He met defendant in December, 1940, at Colorado Springs, where she was employed as a hotel clerk at $10 per week. She also did a small amount of art work and sold an occasional picture which she painted and from which she realized small returns. Defendant was forty-seven years of age and also had been married. She had one married son. She owned a small home in Enid, Okla., worth approximately $1,500, had about $1,000 cash and a 1937 Dodge automobile, which she sold for $350.

The parties had a brief courtship prior to their marriage and lived in Colorado Springs until September 8, 1942, when they moved to Pratt. Plaintiff purchased a modest five-room brick house for $6,000. The house was comparatively new and well arranged. The value of the household furnishings was $1,500. In the antenuptial contract each party waived and relinquished all claim to and control over the property of the other. The contract

made provision for defendant in the event she survived him as his widow as follows:

"In consideration of the contemplated marriage and the covenants of Frances Marie Rancier hereinbefore set forth, Arthur S. Fincham hereby covenants that the said Frances Marie Rancier shall have and receive out of his property and estate at the time of his death, if she shall then be his widow: (1) all statutory allowances and exemptions, together with the homestead rights; (2) an undivided one-fifth (⅕) interest in and to all other property, whether real or personal, of which he the said Arthur S. Fincham may die siezed and possessed."

The separation agreement upon which plaintiff relies reads:

"It is further mutually agreed between the parties hereto that if, after the solemnization of said marriage and for any cause, the parties hereto separate and live separate and apart for any reason whatsoever, then the said Arthur S. Fincham, upon demand of the said Frances Marie Rancier, shall pay to her the sum of Two Thousand dollars ($2,000) in cash, for and as a complete settlement of every claim that the said Frances Marie Rancier may or shall have against the said Arthur S. Fincham by reason of said marriage; and upon the receipt of said sum of Two Thousand dollars ($2,000), the said Frances Marie Rancier shall release and discharge the said Arthur S. Fincham from further liability on any account, and shall no longer be entitled to share in the estate and property of the said Arthur S. Fincham. And the said Frances Marie Rancier covenants and agrees that in such a contingency she does hereby renounce all claim against the property and estate of the said Arthur S. Fincham, of every kind and description, and this contract shall be accepted by any court as a full and complete settlement and satisfaction of the property rights of the parties hereto. And it is expressly declared and agreed that all rights, either legal or equitable, that the said Frances Marie Rancier may have in and to the property and estate of the said Arthur S. Fincham shall then be forever extinguished."

The trial court found, "The plaintiff would not have married without some form of prenuptial agreement." The court further found, ". . . the contract was freely, fairly and knowingly entered into, and without fraud", and that the provision for defendant in the event she survived plaintiff as his widow ". . . would be not only adequate, but very reasonable and equitable." The court, however, concluded the contract was divisible. It struck down the separation provision on the ground it was unreasonable and unjust, smacked of concubinage, violated public policy and was void. The court sustained all other provisions of the contract.

Before considering the validity of the separation provision, and the effect of that decision on other parts of the contract, we shall consider defendant's contention on cross-appeal that the contract

was void *in toto*. Defendant argues the evidence discloses the contract was not fairly made in that she was not advised concerning plaintiff's present and prospective property holdings, was not given an opportunity to know or seek advice concerning her rights in the premises and that the contract was not fair and equitable in its provisions.

We do not deem it necessary to narrate the conflicting testimony concerning the manner and circumstances under which the contract was entered into. The trial court resolved that issue. There is competent substantial evidence to support the court's finding upon that subject and the finding is conclusive on appeal. Moreover, whether defendant was fully advised concerning the extent of plaintiff's property holdings, as to which the court found she was not greatly interested, the court found the provision for defendant as a widow was ". . . not only adequate, but very reasonable and equitable." In that finding we concur.

Contracts of settlement, both antenuptial and postnuptial, have had the consideration of this court on numerous occasions. Many of them were cited in *Dunsworth v. Dunsworth,* 148 Kan. 347, 352, 81 P. 2d 9. In the more recent case of *In re Estate of Cantrell,* 154 Kan. 546, 119 P. 2d 483, we said:

> "The general rule in this state is that contracts, made either before or after marriage, the purpose of which is to fix property rights between a husband and wife, are to be liberally interpreted to carry out the intentions of the makers, and to uphold such contracts where they are fairly and understandingly made, are just and equitable in their provisions and are not obtained by fraud or overreaching. (See *Dunsworth v. Dunsworth,* 148 Kan. 347, 352, 81 P. 2d 9, and cases cited.) Generally speaking, such contracts are not against public policy, although a different rule obtains where the terms of the contract encourage a separation of the parties. (*Neddo v. Neddo,* 56 Kan. 507, 44 Pac. 1.) It may here be said that there is nothing about the present contract which warrants application of the last rule." (p. 551.)

In the Neddo case, *supra,* it was held:

> "A marriage settlement which is unreasonable, inequitable or against public policy will not be upheld; and where, by its terms, the contract invites and encourages a separation as a source of pecuniary profit to either party, it is void." (Syl. ¶ 2.)

In the case at bar it is evident the provision for settlement in case of separation did not invite and encourage a separation as a source of pecuniary profit to the wife. It was not to her advantage to bring about a separation and in consideration of $2,000 be denied

a home, support and maintenance for the remainder of her life and also lose the contractual benefits inuring to her on the death of her husband. The contract did, however, permit her to effectuate a separation at any time and for any cause whatsoever whether legal or otherwise. The price agreed upon for their cohabitation was the same whether for a day, a month, or longer, namely $2,000. In that respect the contract was against public policy insofar as either party was concerned.

Did the provision for settlement, in case of separation, invite and encourage a separation as a source of pecuniary profit to the husband? Manifestly it did. The result is that quite naturally he might be inclined to be less considerate of his marital duties and obligations. He might even become grossly abusive, completely intolerable and deliberately bring about a separation in the contractual assurance that irrespective of the cause of separation he could effectively relieve himself of all marital and contractual obligations by the payment of $2,000, a rather insignificant sum in comparison with his financial worth of approximately $160,000.

In refusing plaintiff a divorce the trial court made a rather pertinent factual observation with reference to the settlement provision in the contract. It reads:

"In this, [referring to the charge of extreme cruelty] as well as in the charge of gross neglect of duty, I cannot overlook the fact that the plaintiff sought and obtained from the woman he married an antenuptial agreement which in some particulars the plaintiff thought to be very favorable to his side; that his reliance upon that agreement no doubt affected his attitude towards the defendant and he became more independent, less considerate, and possibly more provoking himself than he realized or otherwise would have been."

As previously indicated we have held contracts of settlement, antenuptial and postnuptial, must be not only fairly and understandingly made, but must be just and equitable in their provisions. While, as stated, the trial court found this antenuptial contract was fairly and understandingly made and that the provision for defendant, in the event she survived plaintiff as his widow, was reasonable and equitable, it also found the settlement provision, in the event of a separation, was unreasonable and unjust.

We think the findings with respect to both parts of the contract are sound. In order, however, for such a contract to be upheld it must be fair and equitable in not only one but in all of its material provisions. That principle is particularly significant in the instant

contract. What would it avail the wife if the provision made for her at her husband's death is fair and equitable if that provision can be rendered entirely nugatory by a provision which is unjust and inequitable? In other words, if the separation agreement is valid plaintiff might on any day of their honeymoon or at any later time that suited his pleasure or convenience, and for any cause wholly without legal merit, abandon the defendant and compel her to accept $2,000 in full settlement of the fair and equitable provision made available to her at his death.

Moreover, if the separation provision is declared to be valid he may without just cause abandon her and for the wholly inadequate sum of $2,000 relieve himself of his personal marital duty, his statutory duty, to support and maintain her for the remainder of her natural life. That constitutes an unfair, inequitable and unenforceable bargain which courts of equity do not approve. The reason is the contract involves a subject, the marriage relationship, in which not only the parties but society has a vital interest. (*Neddo v. Neddo*, supra; *King v. Mollohan*, 61 Kan. 683, 688, 60 Pac. 731; *Relihan v. Relihan*, 157 Kan. 249, 251, 139 P. 2d 385; 17 Am. Jur., Divorce and Separation, §§ 12, 13, 14, 15; Anno. 70 A. L. R. p. 826; Restatement, Contracts, § 584; 41 C. J. S., Husband and Wife, § 80.)

While courts do not encourage divorce or separation they are required to be realistic concerning the matter. They can compel parties to meet their financial marital duties and obligations but they cannot compel them to live together. There are sound reasons why courts should not attempt to do so when the parties reach a point where they are wholly discordant. That fact, likewise, is now recognized by society. Its representative, the legislature, therefore has provided a remedy for such a contingency whether the parties are in equal wrong or not and where a divorce is refused. G. S. 1935, 60-1506 reads:

"When the parties appear to be in equal wrong, the court may in its discretion refuse to grant a divorce, and in any such case or in any other case where a divorce is refused, the court may for good cause shown make such order as may be proper for the custody, maintenance and education of the children, and for the control and equitable division and disposition of the property of the parties, or of either of them, as may be proper, equitable and just, having due regard to the time and manner of acquiring such property, whether the title thereto be in either or both of said parties, and in such case the order of the court shall vest in the parties a fee-simple title to the

property so set apart or decreed to them, and each party shall have the right to convey, devise and dispose of the same without the consent of the other."

Under the statute it will be observed courts are not compelled to make a division of property rights. They may, however, do so and whether they will do so rests in their discretion. (*McCormick v. McCormick*, 100 Kan. 585, 587, 165 Pac. 285.) The statute gives courts the power to make an equitable division of property whether the title thereto be in the name of either or both of the parties. No reason therefore appears why they may not do so where the property is affected by a contract between them. It has been held that in awarding alimony in a divorce case courts of equity are not bound by an antenuptial contract which is unfair and unjust but may make such an order as to them seems just and equitable in the premises. (*Watson v. Watson*, 37 Ind. App. 548, 77 N. E. 355.) In order to make such a division and disposition of property in the instant case the court, in our opinion, could not give separate effect to the part of the contract which made provision for defendant in the event she survived plaintiff as his widow. It could not give effect to that provision merely because, if standing alone, it would have constituted a valid provision. Here the invalid separation provision undoubtedly was an important consideration for the marriage and for the other provision of the contract, at least insofar as the plaintiff was concerned. It follows those provisions of the contract were not properly divisible in an action for the enforcement of the separation provision. We think, however, that if the trial court had desired to make an equitable division and disposition of property, and it would have been amply justified in doing so, it might have given some consideration to the terms of the antenuptial agreement but it was not obliged to do so nor could it give effect to any of its provisions on the theory they constituted a binding contract.

It is true the court did not make a division of property rights. What has been said concerning the power of the court to make such a division is prompted by a part of the record which indicates the court was of the opinion it was obliged to give effect to the provision for defendant at plaintiff's death because it believed the contract was divisible. We have made the foregoing observations by reason of the further fact that the record discloses the court believed it had no power to make an equitable division of property rights in the absence

of a request for that relief in the pleadings. The court had that power without such a demand or request in the pleadings. (*McCormick v. McCormick,* supra.)

Plaintiff contends the entire contract should stand. From the court's memorandum opinion it appears plaintiff argued below that the separation settlement provision was solely for defendant's benefit and constituted an option which she could elect to accept if she so desired. The same contention is made here. The first trouble with the contention is that it is contrary to the construction either party placed upon the provision. The second is that plaintiff clearly did not predicate his petition on such a construction. His petition, which is before us, was plainly based on the theory the parties were separated and that under those circumstances defendant was bound to accept his tender of $2,000 in full settlement of all claims against his property and all other claims arising out of the marriage relationship. The third difficulty with plaintiff's contention is that while the provision was not drawn as artistically as it might have been, it fairly appears the provision was not intended to grant defendant an option but was intended to mean what plaintiff thought it meant when he filed his action.

The provision was previously quoted herein. The words "upon demand" do not alter the fact that the parties intended that upon a separation for any cause a complete settlement would be made for the sum of $2,000. They also intended the $2,000 would be paid in cash by plaintiff upon demand of the defendant. All that is necessary to make the intended meaning entirely clear is to transpose the phrase, "upon demand of the said Frances Marie Rancier," from its present position to the position immediately following the word "cash." The sentence would then read:

. . . then the said Arthur S. Fincham shall pay to her the sum of Two Thousand dollars ($2,000) in cash, upon demand of the said Frances Marie Rancier, for and as a complete settlement of every claim. . . .

Furthermore if plaintiff's contention that the provision constituted an option were sound then the plaintiff's action for a settlement under the contract must fail. This is true for the self-evident reason that it is conceded defendant made no demand and refused the tender of $2,000.

Plaintiff finally contends that, ". . . apparently she had exercised that option; she was gone half the time and mad the other half." Defendant states the first time plaintiff has contended de-

fendant exercised an option by conduct is on appeal in this court. Plaintiff does not deny that statement and is therefore not entitled to have the contention considered. In any event, if there was no option, she could not exercise it by her conduct. On the other hand, if there had been an option her conduct—assuming it to have been as stated by plaintiff—would not have been a demand for $2,000. It follows plaintiff cannot sustain the settlement provision on any option theory.

In further support of plaintiff's contention the entire contract should be upheld he cites *Sanger v. Sanger,* 132 Kan. 596, 296 Pac. 355; *Dunsworth v. Dunsworth,* 148 Kan. 347, 81 P. 2d 9; and *In re Estate of Cantrell,* 154 Kan. 546, 119 P. 2d 483. He does not contend the cases are in all respects in point factually but, quite properly, directs our attention to statements of principle therein contained. Those cases, cases therein cited and others, have been carefully reviewed. In view of the nature of those cases and the facts involved we adhere to the decision reached in each of them. We do not deem it necessary to discuss them at length. In the Sanger case, as in others, the Neddo case, previously referred to, was distinguished. The contract in the Neddo case was held invalid. It is true the later cases pointed out that the contract in the Neddo case contained only a settlement provision with respect to a divorce or separation and made no other property provision for the wife. The other cases relied upon by plaintiff, in which the contracts were upheld, are clearly distinguishable from the instant case. In the Sanger case, *supra,* it was emphasized, first, that there was no abandonment in the case or failure to perform marital duties and that, therefore, the separation agreement was not operative. The law of the case as laid down in the syllabus in nowise pertains to the subject of public policy as related to cases of this character. In the Dunsworth case it was definitely stated that no question of rights arising because of separation or divorce was involved; that the contract had been fully executed by the parties; and the validity of the separation provision was no longer material.

We have already quoted from *In re Estate of Cantrell,* supra, in which the doctrine laid down in the Neddo case was clearly recognized and the case was cited as authority therefor. The principal question in the Cantrell case was whether the contract was knowingly and understandingly made and whether it was fair and equitable in its provisions.

Counsel for defendant direct our attention to the fact the contract was executed in the state of Colorado. They assert that, in their opinion, the decisions of this state support their contention with respect to the invalidity of the contract but that such question must be determined by the laws of Colorado. The antenuptial contract provides: ". . . this contract is to be construed by the laws of the State of Kansas, which are now in force." In view of this express agreement we need not discuss legal questions which otherwise would be pertinent.

Should judgment for the separate support and maintenance of the defendant have been rendered in this case? Plaintiff insists it should not and that the judgment rendered cannot stand. He points out there was no issue joined on that subject by the pleadings, no trial was had thereon and that the amendment to defendant's cross petition asking such relief on the ground of plaintiff's extreme cruelty and gross neglect of duty, made after the trial court had filed its memorandum opinion containing its findings of fact, constitutes error. He further contends there is no evidence and finding to warrant the judgment.

The action was tried on plaintiff's petition for a divorce on the grounds of the wife's extreme cruelty and gross neglect of duty and for a settlement pursuant to the provision of the antenuptial contract previously discussed. Defendant contested the granting of the divorce on the grounds she was not guilty of such misconduct and that the entire antenuptial contract was void. Neither her answer nor cross petition contained a charge of misconduct on the part of the plaintiff of any kind. There was no prayer for alimony or for separate support and maintenance. Upon the issues indicated the action was tried. The amendment to defendant's cross petition brought in an entirely new cause of action against the plaintiff. No issues were joined thereon. In the amendment plaintiff was advised for the first time that defendant would seek affirmative relief against him in the form of alimony or separate support and maintenance on the ground of his extreme cruelty or gross neglect of duty. While great liberality is allowed in pleadings G. S. 1935, 60-759 does not sanction the amendment made. It allows amendments, before or after judgment, in furtherance of justice when such amendment does not substantially change the claim or defense. In view of the circumstances we do not believe the amendment fairly could be said to have been allowed in furtherance of justice.

Defendant, of course, might have embodied the above charges in her original cross petition or she might have amended it, with leave granted to join issues thereon. She might then have obtained a judgment for alimony without a divorce, under evidence warranting it. G. S. 1935, 60-1516 reads:

"The wife may obtain alimony from the husband without a divorce, in an action brought for that purpose in the district court, for any of the causes for which a divorce may be granted. The husband may make the same defense to such action as he might to any action for divorce, and may, for sufficient cause, obtain a divorce from the wife in such action."

It is true that in *Wohlfort v. Wohlfort,* 116 Kan. 154, 225 Pac. 746, we held:

"When a husband abandons his wife without just cause, she may maintain a suit for separate maintenance, though the abandonment has not been for a period sufficient to constitute a cause for divorce." (Syl. ¶ 1.)

But the wife in the Wohlfort case brought a separate action for the express purpose of obtaining separate maintenance and proved the husband had abandoned her without just cause and it was so found. The separation in the instant case began in May, 1944. An order for temporary support was made. The action was tried December 28, 1944. We have diligently searched the memorandum opinion and the findings of the trial court but are unable to discover a finding which places the blame for the separation upon the plaintiff. We find considerable indication by the court that both parties were partly at fault. As previously indicated such circumstances justified a division of property, without a divorce, under the provisions of G. S. 1935, 60-1506. We think, however, we would not be justified, under the circumstances of this case, in sustaining a judgment against the husband for alimony or separate support and maintenance in the absence of a finding that plaintiff abandoned the defendant without just cause.

The judgment denying plaintiff a divorce is affirmed. The judgment for separate support and maintenance is reversed and the case is remanded with directions to set aside the judgment in that respect.

PARKER, J. (concurring specially): I concur in the result but with regard to the legal status of the antenuptial contract in question I base my conclusion that it is against public policy, and therefore unenforceable, solely upon the proposition that the separation

provisions found therein are of such nature as to facilitate and encourage a dissolution of the marriage relation or at least a separation of the parties.

The doctrine that separation agreements which are not conducive to a continuation of the marriage contemplated by the contract are contrary to public policy is supported by the great weight of authority (6 R. C. L. 771, § 176; 17 C. J. S. 618, § 235[b]; 17 Am. Jur. 546 § 726; Restatement, Contracts, § 584, Comment 2) and this court is numbered among the authorities which are committed to it. (*Neddo v. Neddo*, 56 Kan. 507, 44 Pac. 1; *King v. Mollohan* 61 Kan. 683, 688, 60 Pac. 731). That this is so can be verified by reference to our later decisions where *Neddo v. Neddo*, supra, is cited and the principle announced therein is recognized as prevailing law in this jurisdiction. (See *Dunsworth v. Dunsworth*, 148 Kan. 347, 352, 81 P. 2d 9; *In re Estate of Cantrell*, 154 Kan. 546, 551, 552, 119 P. 2d 483 and *Relihan v. Relihan*, 157 Kan. 249, 251, 139 P. 2d 385).

While this court has not had occasion to make decision on the rights of parties, arising because of separation, under the provisions of a contract such as is here involved, it is my view we have inferentially recognized a similar doctrine prevails with respect to antenuptial agreements and that where their provisions either invite, facilitate or encourage, separation they are also unenforceable as contrary to public policy (see *Dunsworth v. Dunsworth*, supra, p. 352, and *In re Estate of Cantrell*, supra, pp. 551, 552). Of a certainty the doctrine has been recognized and applied in many other jurisdictions (see 6 Williston on Contracts, Rev. ed., 4930, § 1742; 17 C. J. S. 619, § 235b; Restatement, Contracts, 584, Illustration 2; 17 Am. Jur. 156, § 15; Anno. 70 A. L. R. 826, and cases there cited).

I realize there may be a situation, such as existed in *Dunsworth v. Dunsworth*, supra, where the fact an antenuptial contract contains a provision fixing the status of property in the event of a separation will not invalidate the entire agreement; but it is my view the instrument under consideration is not subject to the construction given the one involved in the case just referred to, or to any construction that would permit separability of the illegal separation provision from its other provisions.

Neither am I unmindful of appellant's contention the particular provision of the contract in question was not conducive to a separation, but that, on the contrary, it was greatly to the financial ad-

vantage of the wife that there be none, or his further contention the provisions pertaining to separation for any cause or for any reason granted her an option which she was not required to exercise. I am inclined to agree with appellant on both points. Even so, his argument that the contract was valid is not convincing. It overlooks the vital factor that he, too, was a party to an agreement containing provisions which, conceding his position with respect to his wife, facilitated and encouraged a separation so far as he was concerned if for any reason he became dissatisfied with his marital status. That in my opinion is the inherent vice which brings the contract within the scope of the doctrine to which I have heretofore referred.

THIELE, J. (dissenting in part): I am in agreement with the court's opinion that the judgment for support and maintenance should be set aside. I am also in agreement that the antenuptial contract under consideration is indivisible and that therefore it is wholly good or wholly bad. I am not in agreement, however, with the construction placed on that contract.

Briefly stated, my reasons for dissent are as follows: In construing the contract, it is not particularly important what the parties may have contended in the trial court, for the construction of the contract was the duty of the trial court, and on appeal, of this court. It is a fundamental rule of construction that where a contract is susceptible of two meanings, one of which will uphold it and render it valid, while the other would render it invalid and unenforcible, the former will be adopted. See 17 C. J. S. 735, 12 Am. Jur. 793. Applying that rule to the contract, the so-called separation agreement, quoted in full in the court's opinion, should be construed as giving Mrs. Fincham an option or right to demand $2,000 under the conditions indicated. She did not have to make any demand and she never has done so. Mr. Fincham can by no act of his force her to make such a demand. It is obvious that it would be to Mrs. Fincham's disadvantage to invoke the provision and that Mr. Fincham cannot do so. So construed the contract in all its parts is valid. To say that the provision encourages a separation is a conclusion in which I cannot agree.

Neither in the particular section mentioned, nor in the entire contract, is there any provision even attempting to relieve Mr. Fincham of his statutory duty to support his wife, and if she alleges

and can prove her right to alimony without a divorce, as provided by G. S. 1935, 60-1516, then such an order might be made without in any manner interfering with the contract, or, as is indicated in the court's opinion, in its discretion the trial court might make an order consistent with G. S. 1935, 60-1506.

HARVEY, C. J., concurs in the foregoing dissenting opinion.