No. 36,954

In re Estate of Jacob Winter, Deceased. (AUGUSTA WINTER, *Appellant,* v. J. J. WINTER, Administrator, *Appellee.*)

(192 P. 2d 186)

Opinion filed April 10, 1948.

*Dean McIntyre,* of Abilene, argued the cause, and *Roscoe King,* of Marion, and *George D. Bischoff,* of Abilene, were with him on the briefs for the appellant.

*David W. Wheeler,* of Marion, argued the cause, and *Edwin G. Westerhaus,* of Marion, was with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This proceeding originated in the probate court on the petition of a widow to have a homestead and $750 set aside to

her under the provisions of G. S. 1945 Supp. 59-401 and 59-403, as the surviving spouse of her deceased husband. The plaintiff appeals from a judgment of the district court denying her petition.

Plaintiff and Jacob Winter, both of whom had been previously married, were united in marriage in 1919. No children were born to their union. Marital differences caused Mrs. Winter to bring a divorce action against her husband in 1929. As a result they entered into a postnuptial contract on May 22, 1929, by the terms of which Mrs. Winter received $1,100 and substantially all of the personal property while Mr. Winter was given title to their real estate consisting of a 160-acre farm. With respect to the property thus divided such contract provided:

"Each party hereto agrees never to set up any claim to any of the property hereto allotted to the other, or any after-acquired property either in life or by way of inheritance.

"Each agrees that the other may hold, use, incumber, aleinate (sic) and convey any of said property, or any property, hereafter acquired as his or her separate property, to the same extent as though the parties hereto were never married to each other, and that, upon any gift, conveyance or incumbrance of property of either, the other will join in a proper instrument of writing necessary to the release of all claims therein, and in default of signing such writing a court of equity may make such decree as may be necessary to carry out this instrument.

. . . . . . . . . .

"This agreement is intended as a fair, full and complete settlement of all right in property now owned by the parties hereto or either of them."

Within a short time after the contract was executed the parties resumed marital relations and, after sale of the farm, moved to Hillsboro where Mr. Winter purchased a home in which he and the appellant lived together until he died on the 30th day of April, 1946.

Mr. Winter made a will in September, 1944, whereby, except for a bequest to his wife of a portion of his furniture, he gave all the rest of his property, including the homestead in controversy, to his four children by a former marriage. In due time this will was presented for and admitted to probate. Soon thereafter Mrs. Winter filed her petition charging that under the statute she was entitled to the use and occupancy of the homestead and an allowance of $750 as the testator's surviving spouse.

While the record on the point is not clear it appears there was no material accumulation of property by either of the parties from

1929 to 1946 and that on the date of Mr. Winter's death his estate consisted only of the homestead valued at the sum of $4,000 and personal property amounting to about $620.

At the trial in district court Mrs. Winter testified that after the resumption of marital relations she performed the ordinary duties of a housewife. She conceded that she had never returned the $1,100 paid her under the separation agreement and that she still had approximately $500 of that amount. However, she claimed that the major portion of the $600 expended had been used in purchases for the household and in payment of taxes on the home. She also stated that after executing the separation agreement she and Mr. Winter never talked about it again, that she never saw it in the home after that time and that it was not found in his personal effects after his death.

With the record in substance as heretofore related the trial court found that Mrs. Winter had disposed of her homestead and exemption rights by means of a postnuptial contract which had not been abrogated and rendered judgment denying her petition.

When appellant's argument on appeal is carefully analyzed it becomes apparent her sole claim of error is predicated upon the proposition that the judgment of the trial court was contrary to the law and the evidence.

Before turning to the issues thus raised by the appeal it should be stated in fairness to counsel for appellant they concede that under our decisions (See *Keller v. Keller*, 121 Kan. 520, 247 Pac. 433; *Perkins v. Perkins*, 154 Kan. 73, 114 P. 2d 804; *In re Estate of Cantrell*, 154 Kan. 546, 119 P. 2d 483; *Fincham v. Fincham*, 160 Kan. 683, 165 P. 2d 209) postnuptial contracts fixing property rights between a husband and wife, freely and intelligently made, and which are just and equitable in their provisions, have long been held to be valid. Also, that they make no contention here that the instant contract was invalid as executed. Appellant's point is that such contracts, even though they control the division and affect the descent of property, are not to be construed as divesting the surviving spouse of the homestead rights or family allowances granted her under the provisions of G. S. 1945 Supp. 59-401 and 59-403.

In our opinion appellant's position on the point just mentioned is no longer an open question in this jurisdiction and cannot be upheld. In *Hewett v. Gott*, 132 Kan. 168, 294 Pac. 987, one of the issues was whether a contract, similar in character to the one here

.involved, divested the surviving spouse· of his homestead rights. We held:

".  .  .  where the parties to the contract have definitely renounced and waived all right, title and interest—present, future or contingent—in and to the property of the other and have agreed that in case of death the survivor shall not be entitled to receive or claim any interest in or to the property of the deceased, it is held the surviving husband has been divested not only of his right of inheritance but also of any homestead right to the land on which the wife was residing at the time of her death." (Syl. ¶ 4.)

That this court is committed to the principle of law announced in the foregoing quotation is evidenced by resort to its more recent decisions. See *Meech v. Grisby*, 153 Kan. 784, 787, 113 P. 2d 1091, and *Relihan v. Relihan*, 157 Kan. 249, 251, 139 P. 2d 385, where the case in which such quotation is to be found is cited and approved.

See, also, *Porter v. Axline*, 154 Kan. 87, 114 P. 2d 849, which holds:

"Under a postnuptial contract, fairly and intelligently entered into by a husband and wife, each of whom owned property, providing how the property should be handled while they lived and how it should be disposed of at their death, and providing homestead rights and other benefits for the wife in the event the husband died first, set out and discussed in the opinion, it is held, the homestead rights and allowances to the wife as the surviving spouse are governed by the contract rather than by the statutes mentioned in syllabus one." (Syl. ¶ 2.)

We are not impressed with appellant's argument that there was no finding of reconciliation in *Hewett v. Gott*, supra, and that hence it is not decisive of the case at bar. While reconciliation and the resumption of marital relations are entitled to consideration along with other matters in determining whether a separation agreement has been abrogated they have no bearing whatsoever upon the construction to be given the contract itself.

Neither do we agree with the suggestion the provisions of article 4 of the new probate code change the rule that homestead rights and allowances´ may be effectively disposed of by a valid separation agreement. In *Porter v. Axline*, supra, we held:

"The sections of the probate code (Laws 1939, ch. 180, §§ 19, 20, 21, 22, 24. G. S. 1939 Supp. 59-401 to 59-404, 59-502) do not attempt to deal with the situation where there has been a valid contract between husband and wife respecting the disposition of their property upon the death of one of them." (Syl. ¶ 1.)

Nor do we give any weight to the claim that since under our decisions (*Watson v. Watson*, 106 Kan. 693, 189 Pac. 949; *In re*

*Estate of Garden,* 158 Kan. 554, 566, 148 P. 2d 745), an antenuptial contract cannot foreclose a surviving wife from successful assertion of her homestead rights the rule with respect to postnuptial agreement should be the same. Such decisions are based upon the restrictions of our own constitution (art. 15, § 9) and statute (G. S. 1935, 60-3501) pertaining to alienation of the homestead and have no application to a situation where a husband and wife jointly consent to disposition of all their property, including the homestead, through the medium of a separation agreement.

Appellant next contends the language of the involved contract, heretofore quoted, is not sufficiently comprehensive to permit the conclusion homestead rights are within the scope of its terms. Reference to such language reveals that it covers all property owned by the parties and "any after acquired property." The fact the Hillsboro property, which was purchased by the decedent within a very short time after his reconciliation with appellant and long before it could be subject to any claim it was acquired through their joint and mutual efforts as husband and wife, was subsequently occupied as the family home did not result in changing its status as "after acquired property." This conclusion also finds support in *Hewett v. Gott,* supra. If anything, the terms of the contract there involved were less inclusive than those to be found in the one now being considered.

Finally appellant contends the trial court erred in holding the contract had not been abrogated.

It is well settled in this jurisdiction that mere resumption of marital relations between the parties to a separation agreement does not in and of itself result in abrogation. Other facts and circumstances indicating an intention of the parties to abrogate must exist before it can be set aside. The rule as to what is required to authorize such action, where abrogation is the issue, is well stated in *Dennis v. Perkins,* 88 Kan. 428, 129 Pac. 165. There we held:

"Reconciliation and the resumption of marital relations do not necessarily avoid a separation agreement previously made by the parties, such effect depending on the question whether the provisions of the contract and the conduct and circumstances show an intention to treat the agreement as no longer in force.

"Such reconciliation and resumption do not warrant the court in deeming such contract avoided any further, if at all, than its terms taken in connection with the situation and conduct of the parties indicate their intention to avoid it." (Syl. ¶¶ 1, 2.)

We have carefully reviewed the record. It fails to disclose any direct evidence of revocation, either oral or written. Indeed, as has been heretofore indicated, appellant conceded when testifying as a witness in her own behalf that neither she nor her husband ever mentioned or discussed the contract after the date of its execution. When viewed in its entirety, the very most that can be said for the evidence is that it reveals some conflict with respect to conduct which might indicate an intent on the part of the parties to treat the contract as canceled. The trial court determined such conflict against appellant and the record discloses substantial competent evidence to support its action. In that situation its decision the contract had not been abrogated must be upheld.

The judgment is affirmed.