No. 47,906

JOHN M. RANNEY, *Appellee,* v. HELEN M. RANNEY, *Appellant.*

(548 P. 2d 734)

Opinion filed April 10, 1976.

*John M. Ranney,* argued the cause *pro se.*

*Jerry W. Hannah,* of Topeka, argued the cause, and *Warren D. Andreas,* of McSpadden & Andreas, of Winfield, was with him on the brief for the appellant.

The opinion of the court was delivered by

MILLER, J.: The defendant wife appeals from the judgment of the trial court divorcing the parties and upholding and enforcing an antenuptial agreement. She does not challenge that portion of the order granting a divorce. The principal issue before us is whether the antenuptial agreement is valid and enforceable.

The parties were first married on June 21, 1947. Two children, Virginia and Joseph, were born of that marriage. The Cowley County District Court, Honorable Jerome Harman presiding, entered a decree divorcing the parties on July 7, 1958. The wife was awarded the home and furnishings, an automobile, the sum of

$25,000 as alimony, and child support. The alimony and support were payable in monthly installments.

The parties discussed remarriage and set January 22, 1961 as the date for the ceremony. Prior to the remarriage, John Ranney consulted an attorney and the antenuptial agreement which is at the heart of this conflict was prepared. On January 21, 1961, the day before the proposed remarriage, the plaintiff presented to the defendant, in the presence of the minor children, the following agreement which he announced was a prerequisite to the marriage:

"This is an agreement between Helen R. Ranney a single person and John M. Ranney a single person. This agreement made prior to marriage.

"It is our intention to be married. Both of us intend the marriage to be successful, but fully realize in view of past difficulties, it may not.

"In the event for any reason the marriage is dissolved or seperated [sic], then Helen shall have the property she owned at the time of this last marriage and John shall have the property he owned at the time of this last marriage. John shall complete the payment of the alimony awarded Helen in her divorce decree and Helen will make no further claim for alimony, support or division of property.

"In other words both Helen Ranney and John Ranney shall be in the same financial position as they were before the marriage.

/s/ Helen R. Ranney
/s/ John M. Ranney"

While some of the evidence is conflicting, it is clear that Helen signed the agreement, returned it to John, and he placed it in his safety deposit box. Helen did not have the advice of counsel and she denies that she read the agreement prior to signing it.

The second marriage lasted for over eleven years. Then on February 22, 1972, the plaintiff instituted this action for divorce and sought to enforce the antenuptial agreement. Following trial, the court found that both parties knew the extent and value of the property of the other at the time the agreement was entered into; that there was no undue influence, overreaching, duress, threat, deception or fraud; that Helen examined the document, knew it was a property settlement agreement, and signed it voluntarily and of her own free will. The court held that the agreement was enforceable, effective and binding upon the parties.

Helen was awarded the home and furnishings (which had been awarded to her in the first divorce), a "replacement" automobile, and a one-third interest in a business property she had acquired by gift from John during the remarriage. The court made no division of property and did not award Helen alimony or support.

She raises five points on appeal, asserting that the court erred

(1) in its construction of the agreement, (2) in failing to award alimony and to divide the property; (3) in failing to find the agreement void as against public policy; (4) in finding that the agreement was fairly and understandingly made; and (5) in limiting discovery as to plaintiff's financial condition and refusing to admit evidence thereof.

She contends that the phrase "no *further* claim for alimony, support or division of property" (emphasis supplied) should have been construed to apply only to any request for an additional share of the property owned by the parties at the time of the first divorce and not as a limitation on any *future* division of property. This is a strained construction of the phrase and one not in harmony with the explanatory paragraph which follows it. Even in the absence of this agreement, Helen could not have secured additional alimony through the original action, in which the judgment had become final. Our statute then in force was G. S. 1949, 60-1511. Alimony judgments thereunder had to be for a fixed amount and they were final in character. *Bourman v. Bourman,* 155 Kan. 602, 127 P. 2d 464. Alimony awards, once final, could not be modified or changed thereafter. *Calkins v. Calkins,* 155 Kan. 43, 122 P. 2d 750; *Booth v. Booth,* 114 Kan. 377, 219 Pac. 513. The trial court correctly construed the language of the agreement.

The trial court found that the agreement was fairly and understandably made. Defendant points to evidence to the contrary. Suffice it to say that we have carefully reviewed the record and find substantial competent evidence to support this finding of the trial court. Such a finding will not be disturbed on appeal though there is evidence in the record which tends to support a contrary conclusion. The trial court heard and weighed the conflicting evidence. This court will not reweigh the testimony and substitute its judgment for that of the trier of fact. *Service Oil Co., Inc. v. White,* 218 Kan. 87, 93, 542 P. 2d 652.

Of the remaining three points, two are dependent upon the other. If the antenuptial agreement is valid, then the trial court properly restricted discovery and evidence as to plaintiff's financial worth, and properly refused the alimony and division of property sought by defendant. We turn to the seminal issue, the validity or invalidity of the agreement.

The terms of the agreement are significant. They provide that in the event the marriage fails, each party should have the property each owned at the time of the marriage; that John would continue

to pay *alimony* during the marriage; and that Helen would make no further claim for alimony, support or division of property.

We note that John continued to make the alimony and child support payments through the clerk of the court, and that he paid the alimony judgment in full long before this case was commenced. The evidence is undisputed that Helen used the money so paid for family living expenses, though the trial court found that the family would not have gone without if she had not done so. There is no evidence that she accumulated any savings out of the "alimony" payments, or that she had any funds in her own right at the time of the present divorce other than the proceeds from the sale of the home which was sold *pendente lite.*

The agreement contains no provision relating to assets acquired during the marriage, unless because of the language prohibiting Helen from seeking further alimony or division of property it tacitly assigns all of such after-acquired property to John. This is the precise result of the trial court's application of the contract. As we have noted, discovery into the area of John's holdings was limited and evidence thereon was sparse. However, there are suggestions in the record that his net worth was in excess of one million dollars.

We discussed antenuptial contracts at length in *Fincham v. Fincham,* 160 Kan. 683, 165 P. 2d 209. Mr. Justice Wedell, speaking for the court, said:

"The general rule in this state is that contracts, made either before or after marriage, the purpose of which is to fix property rights between a husband and wife, are to be liberally interpreted to carry out the intentions of the makers, and to uphold such contracts where they are fairly and understandingly made, are just and equitable in their provisions and are not obtained by fraud or over-reaching. Generally speaking, such contracts are not against public policy, although a different rule obtains where the terms of the contract encourage a separation of the parties . . . (Syl. ¶ 1.)

"Public policy relating to marriage is to foster and protect it, to make it a permanent and public institution, to encourage the parties to live together and to prevent separation. (Syl. ¶ 2.)

"A separation provision in an antenuptial contract which permits the parties to separate at any time and for any cause whatsoever, whether legal or otherwise, and in which the wife relinquishes all rights she may have against the husband personally and in and to his property, on terms that are unreasonable and inequitable, tends to encourage separation and to defeat the marriage relation, is contrary to public policy and unenforceable by either party." (Syl. ¶ 3.)

In *Fincham,* the husband brought suit for divorce and sought to enforce an antenuptial agreement which provided that in the event of a separation, then the husband upon demand would pay

the wife the sum of $2,000 as a complete settlement of every claim the wife might have against the husband. His financial worth was shown to be $160,000. The court held that portion of the contract providing for a payment of $2,000 in full settlement of all rights and obligations arising out of the marriage to be against public policy, tending to invite and encourage a separation, unreasonable, inequitable and void.

Is the contract before us void for the same reasons? We think it is. It did not invite and encourage Helen to take steps to dissolve the marriage, for though she would retain her home and automobile she would lose all right to support and maintenance for the rest of her life and she would lose all right to share in the assets acquired through the joint efforts of the parties during the marriage. John, however, tended to gain by bringing about a separation. He would lose nothing except his inchoate right in the home, furnishings and car; he would be relieved of all obligation to support Helen; he would retain all property acquired during the marriage; and Helen could make no claim against him. John was not even required to make a token cash payment such as the *Fincham* agreement provided.

These parties were not once married to others; they had no children by prior marriages to others; and their property is that acquired by their joint efforts during their marriage to each other. The agreement did not contemplate future accumulation of property, and made no provision for the disposition of such property. The provision for the continued payment of "alimony" during the marriage in fulfillment of the husband's duty of support, both during and after dissolution of the marriage, is clearly a sham and a subterfuge and against public policy. The inadequacy of this provision for support of the wife and the absence of any provision for disposition of after-acquired property, as well as the circumstances of the parties and all provisions of the contract must be considered together in determining whether the contract is fair, just and equitable. As noted above, the provision for payment of "alimony" during the marriage is void, and should not be taken into consideration in construing the overall effect of the agreement. As we held in *Bremer v. Bremer*, 187 Kan. 225, 356 P. 2d 672, and *Fincham v. Fincham*, supra, an antenuptial agreement which tends to promote separation or divorce and which is unfair is unenforceable and may be set aside. This agreement would leave Helen with a house and

car, and no part of the assets acquired through their joint efforts during the eleven year span of the marriage.

Under all of the facts and circumstances here before us we conclude that the agreement entered into on January 21, 1961 is unfair, inequitable, contrary to public policy and unenforceable.

The judgment of the trial court is therefore reversed with directions to determine the value of the holdings of the parties and to enter such order for alimony, division of property and support as justice may require.

SCHROEDER, J., concurring: I cannot agree that the antenuptial contract challenged herein is unenforceable and void.

The parties in this case were previously married and lived together for a period of approximately eleven years, during which time they had two children born of the marriage. The first divorce resulting in a decree on July 7, 1958, was bitterly fought and protracted with both parties adequately represented by counsel.

The court was informed in argument the remarriage of the parties was in part due to efforts of the minor children of the marriage who wanted their parents together.

The second marriage lasted over eleven years when divorce proceedings were instituted. After hearing the divorce action the trial court found *both parties knew the extent and value of the property of the other at the time the antenuptial contract was entered into; that there was no undue influence, overreaching, duress, threat, deception or fraud; that Helen examined the document, knew it was a property settlement agreement, and signed it voluntarily and of her own free will.* The court in its opinion recognizes the record discloses substantial competent evidence to support the finding of the trial court that the agreement was fairly and understandingly made.

Under these circumstances I cannot agree that the antenuptial contract is void.

First, the provision for continued payment of alimony is innocuous. Continued payment of alimony pursuant to the divorce decree dissolving the first marriage after remarriage could not be required, but John M. Ranney paid the full amount in accordance with the agreement, and for present purposes any argument based upon this provision is moot.

Second, the last two paragraphs of the agreement regarding the parties' property in the event the marriage is "dissolved or sepa-

rated," when read together, are ambiguous in the sense that nothing is said concerning the accumulation of property by the joint efforts of the parties after the second marriage.

In view of the fact that the trial court limited discovery of the plaintiff's financial condition and refused to admit evidence thereof, it is improper, in my opinion, to resort to hearsay suggestions in the record as to the plaintiff's net worth in an effort to bolster the court's decision which, in effect, overcomes the findings of the trial court.

In *Frontiero v. Richardson*, 411 U. S. 677, 36 L. Ed. 2d 583, 93 S. Ct. 1764, four members of the U. S. Supreme Court said statutory classifications based upon sex were inherently suspect and must be subjected to close judicial scrutiny, and under such standard of judicial scrutiny, the challenged statutes were unconstitutional as constituting invidious discrimination against servicewomen in violation of the due process clause of the Fifth Amendment. A fifth member of the court concurred in the judgment, agreeing that the statutes worked an invidious discrimination in violation of the constitution.

The Kansas Act Against Discrimination (K. S. A. 1975 Supp. 44-1001, *et seq.*) prohibits discrimination against individuals in employment relations, public accommodations or in housing by reason of *sex*, among others.

If under modern constitutional doctrine women are constitutionally recognized as free agents on an equal footing with men, certainly a corresponding equal obligation attaches to the free and voluntary acts of a woman when she enters into a legitimate contract with a man.

Such change in modern constitutional doctrine regarding the rights of women, in my opinion, foreshadows a requirement that courts shed their overzealous supervisory protecting mantle concerning women's acts when women exercise their constitutional freedom.

In my opinion the antenuptial contract should be upheld and the trial court's decision should be affirmed on this point. However, the judgment should be reversed and the case remanded to the trial court for a determination of the property accumulated by the joint efforts of the parties after the second marriage, with directions to make an equitable division of the property accumulated after the second marriage.

KAUL, J., joins in the foregoing concurring opinion.