No. 44,535

FRANCES SIMONICH, Executrix of the Estate of John J. Heath, Deceased, *Appellee,* and WOODROW K. GINGERY, ELIZABETH GINGERY and DOROTHY DePAULI, *Interveners-Appellees,* v. MADENA WILT, *Appellant.*

(417 P. 2d 139)

Opinion filed July 22, 1966.

*James P. Cashin,* of Prairie Village, argued the cause, and *John J. Lyons, Jr.* and *James R. Pusateri,* both of Prairie Village, and *Fred J. Freel,* of Kansas City, Missouri, were with him on the brief for the appellant.

*Walter G. Klamm,* of Kansas City, argued the cause, and *Chas. F. Burkin, Jr.,* also of Kansas City, was with him on the brief for the appellee, Frances Simonich, Executrix.

*John J. Ziegelmeyer,* of Kansas City, was on the brief for the Interveners-Appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action at law instituted by the executrix of an estate claiming as an asset of the decedent's estate moneys in a joint tenancy bank savings account standing in the names of the decedent and Madena Wilt (defendant-appellant). The case was tried to the court and appeal has been perfected by the defendant from an adverse judgment, holding the joint tenancy bank account was impressed with an oral trust on behalf of the devisees and legatees under the will of the decedent.

The primary question in this case is whether the competent evidence presented in the record establishes the creation of a valid joint tenancy bank savings account with the right of survivorship.

John Heath, a widower, returned to Kansas City, Kansas, from California following the death of his second wife during the latter

part of 1961. He established his residence in Kansas City with Madena Wilt, a daughter by his first marriage, and her husband, George Wilt, under an arrangement whereby Madena was to care for him in his old age.

Heath had previously been in the real estate business and although advanced in years and in questionable physical health, all witnesses considered him to be competent and able to conduct his business up until his death.

The joint tenancy account in controversy was created during the latter part of July, 1962, when Heath and his daughter, Madena, went to the Twin City State Bank in Kansas City, Kansas, for that purpose, after Heath had sold part of his real estate holdings in California, from which he realized cash sums approximating $28,200.

Heath and his daughter, Madena, conferred with Charles Dodsworth, executive vice-president at the bank, with whom they were acquainted, and Heath requested Dodsworth to set up a joint savings account with right of survivorship between himself and his daughter, Madena Wilt. Dodsworth and Heath discussed the right of survivorship with respect to the account in question, the fact that either party could draw on the account, and that in the event of the death of either of them, the survivor would take the balance then remaining. Thereupon, at Heath's request, Dodsworth had both Heath and his daughter, Madena, sign a signature card establishing a joint tenancy account between them with right of survivorship. Deposit was concurrently made in the approximate amount of $27,000, and the passbook was given by Heath to Madena Wilt who retained the same in her possession.

(The petition alleged the account in question, a sum of money in excess of $26,000, stood in the name of John J. Heath and Madena Wilt as joint tenants. This allegation of the petition was admitted in the answer.)

Subsequent deposits and withdrawals were made to and from the account by Madena Wilt. The funds deposited were provided by the decedent Heath, and the funds withdrawn were for his use and benefit during his lifetime. Prior to his death, Heath told Madena and her husband that upon his death the money remaining in the joint account was to be hers. The decedent also told his son, Wilbur Heath, that he had the joint account all fixed up the way he wanted.

Heath died testate on the 26th day of December, 1962, a resident of Kansas City, Kansas. Frances Simonich (plaintiff-appellee), also

a daughter by Heath's first marriage, was duly appointed executrix of his estate on the 4th day of February, 1963. The decedent had not told Frances Simonich about the joint tenancy bank account in controversy during his lifetime, and she did not learn of its existence until sometime after his death.

On the 1st day of November, 1963, the executrix filed her petition in the court below claiming moneys on deposit in the above described bank account on the date of the decedent's death as an asset of the decedent's estate, alleging that the decedent created the account as a matter of convenience and did not intend that it go to Madena upon his death, but that the funds should be distributed in accordance with the terms of his will.

The other heirs, interveners, appear in this action in support of the executrix' position, likewise claiming an interest in the decedent's estate.

Issue was raised by the defendant's answer, which admitted the creation of the joint tenancy bank account, but denied that the decedent did not intend that it go to the defendant upon his death.

The executrix' evidence in support of her theory of recovery was that on various occasions after the creation of the joint tenancy account, the decedent had mentioned to the executrix and other relatives that he desired his children and stepchildren to share equally in the proceeds of his estate, and that in his opinion each would receive approximately $10,000.

Other testimony was admitted by the trial court concerning an effort made by the decedent to establish residence with a daughter in California to no avail prior to the establishment of the joint bank account here in question.

The trial court, among other things, found:

"3. That an account was established in the Twin City State Bank of Kansas City, Kansas, during the lifetime of John J. Heath, deceased, in the names of John J. Heath and the defendant, Madena Wilt, as a survivorship account and that the contributions for the deposits made to said account were made solely by the decedent, John J. Heath, with no contributions whatever made by the defendant, Madena Wilt; that disbursements and expenditures were made from said joint account by the decedent John J. Heath, during his lifetime and by the defendant, Madena Wilt, during the lifetime of the decedent for his use, welfare, benefit and maintenance with no disbursements whatsoever made from said joint account during the lifetime of the said John J. Heath for the use and benefit of Madena Wilt.

. . . . . . . . . . . .

"5. The Court further finds that the said account at Twin City State Bank of Kansas City, Kansas, was, in truth and in fact, the account of and monies

belonging to the said John J. Heath and that at his death the amounts on deposit with said bank were impressed with an oral trust in behalf of the devisees and legatees under the will of John J. Heath, deceased, as admitted to probate in cause No. 35736 in the Probate Court of Wyandotte County, Kansas, and that judgment be and it now is entered in favor of the plaintiff and interveners for the amount of money and sums that were on deposit in the Twin City State Bank of Kansas City, Kansas, at the date of death of John J. Heath, to-wit: December 26, 1962, together with all interest and increments thereto, as allowed and paid by said bank as accretions and additions to said account and to be made and included as an asset of the estate of John J. Heath, deceased."

Judgment was entered accordingly and costs were taxed to the defendant.

The defendant's motion to set aside the judgment was overruled on the 9th day of July, 1965, and appeal has been duly perfected to this court.

It must be conceded under K. S. A. 58-501, that a grant of personal property to two or more persons creates in them a tenancy in common with respect to such property, unless the language used in such grant makes it clear that a joint tenancy was intended to be created.

Here the trial court found (finding No. 3) that a joint tenancy savings account was established in the Twin City State Bank of Kansas City, Kansas, by the decedent during his lifetime in the names of the decedent and Madena Wilt, his daughter, as a survivorship account. This fact was admitted in the pleadings and established by the testimony of Madena Wilt and later corroborated by Charles Dodsworth, the executive vice-president of the Twin City State Bank. There is no evidence in the record contrary to their testimony that the decedent and Madena Wilt signed a joint survivor account signature card at the bank intending to create and, in fact, did create by contract a valid joint tenancy bank savings account with right of survivorship.

The facts in the instant case are readily distinguishable from those in *Miller v. Higgins,* 188 Kan. 736, 366 P. 2d 257, where this court affirmed the trial court's finding that the evidence was insufficient to show a joint tenancy bank account with the right of survivorship had been created. There Fern Henery, a part-time employee in the Havensville State Bank, had the name of her brother, J. C. Higgins, inserted upon the ledger sheet of her account in place of her deceased husband's name. The account then read: " 'Fern Henery or J. C. Higgins and to the survivor of them upon the death of either.' "

(p. 737.)  As a matter of practice, the bank at that time did not require signature cards and issued passbooks only on request.  They considered the ledger primary evidence of ownership.  However, the bank at the request of Fern did issue a passbook which was identified only in Fern's name.  All deposits were made by Fern Henery, the deposit slips showing her name only, and the account book had only Fern Henery's name appearing on the title page.  Higgins never actually knew that his name was on the account until about ten days before Fern's death.

At common law and also under the law as it generally prevails at present, the creation and the continued existence of a joint tenancy depends upon the coexistence of four requisites, namely:  The tenants must have one and the same interest; the interests must accrue by one and the same instrument or conveyance; they must commence at one and the same time; and the property must be held by one and the same undivided possession.  In other words, there must be the following four unities:  (1) unity of interest; (2) unity of title; (3) unity of time; and (4) unity of possession.  If any one of these elements is lacking, the estate will not be one in joint tenancy.  (20 Am. Jur. 2d, Cotenancy and Joint Ownership, § 4; and *Baade v. Ratner*, 187 Kan. 741, 359 P. 2d 377.)

The appellees contend there was no unity of interest between the decedent and his daughter, Madena, to fulfill the requirements of the basic law relative to the creation of joint tenancies.  It is argued the daughter's interest was not that of claiming, or an intent to claim, the entire fund, but only to take what was left after what was needed and used by her father in his lifetime for his sole purpose, benefit and well being.  The appellees further argue the evidence shows Madena was paid $225 per month for the care and treatment of her father, while he was in her home for approximately two years, less the time he was in the hospital.  (The appellees fail to mention that after March, 1962, Madena did not return to her former employment in order to care and provide treatment for her father.  They also fail to mention that Madena and her husband, at their own expense, built an extra bathroom in their home for her father's convenience.)

The appellees contend unity of time is unavailing to substantiate the appellant's case, as it was not fulfilled in the ultimate degree of certainty required, notwithstanding the time was the present.

The appellees concede there was unity of title by the original creation of the joint tenancy account, although the funds were

solely contributed by Heath, and Madena's name was put on the account as a joint owner; but it is argued this does not denote complete ownership and is rebuttable. On this point to rebut unity of title, the appellees rely on testimony of Madena given in a deposition which was *not in evidence* before the trial court.

The appellees also concede there was unity of possession to the extent that Madena had the passbook; the account was in her name as well as her father's; she had accessibility to the account; she exercised possessory control by paying approximately $8,000 for medical expenses and care and hospitalization of her father, and after his death by paying the funeral and burial expenses, as well as the withdrawal from the account of $2,500 to pay her attorney fee. But the appellees argue she did not exercise possessory control by withdrawing one cent for her personal use.

By reason of the foregoing, the appellees argue Madena served as an oral trustee, as found by the trial court, in having her name on the account at the request of her father for convenience, so that someone could withdraw money for his needs as the occasion or emergency for money arose.

We are told in a memorandum, submitted and signed by counsel for the respective parties after the preparation of briefs and the presentation of oral arguments in this case, that there were two bank accounts in the name of the decedent and Madena Wilt, one a savings account, the subject matter of this action, and the other a checking account.

Madena Wilt testified she and the decedent had sometime during July, 1962, opened a joint savings account at the Twin City State Bank from proceeds of the sale of the decedent's California property, which amounted to approximately $28,200; that added to this account subsequently was approximately $7,000 from the closing of several savings and loan accounts that were formerly held in California. Additional deposits in small amounts came from rental payments on properties in California and Kansas. A portion of the funds used by the decedent was transferred from the savings account to a joint checking account in the name of the decedent and herself, with such funds being withdrawn and used to pay medical expenses of the decedent.

The trial court decided the case upon its own theory, going beyond the pleadings, to impress an oral trust upon the funds deposited to the joint savings account in question.

The appellees' entire claim to the joint tenancy bank savings

account is based upon parol evidence, collateral to the contract establishing the account, from which they infer an intent on the part of the decedent contrary to the contract. They rely upon evidence, which the trial court admitted over objection of the appellant, to the effect that the decedent made his will prior to the creation of this account, leaving his estate in equal shares to his children and stepchildren; that the decedent was said to have made statements on several occasions after the creation of the joint account that he wanted his estate divided equally between his children and stepchildren; and that each should get approximately $10,000. Therefore, the appellees contend the decedent must have intended the joint bank account in question to be a mere convenience account, the funds of which would be brought into the estate to permit the beneficiaries to realize approximately $10,000 each.

Here, as distinguished from the case of *Miller v. Higgins,* supra, the joint tenancy bank savings account was created by the contract of the parties evidenced in writing, after both of the parties thereto appeared before the executive vice-president of the bank and fully discussed the matter before executing the contract and depositing the funds. The passbook was given to Madena Wilt, the funds for the account having been provided by the decedent.

The intention of the grantor *to create* a joint tenancy bank savings account with right of survivorship is clearly indicated by the contract which each of the parties thereto understood.

This court has frequently held that it is a judicial function to interpret a written contract which is free from ambiguity and does not require oral testimony to determine its meaning. Ambiguity in a written instrument does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning. (*Klema v. Soukup,* 175 Kan. 775, 267 P. 2d 501.) If a written contract is actually ambiguous concerning a specific matter in the agreement, facts and circumstances existing prior to and contemporaneously with its execution are competent to clarify the intent and purpose of the contract in that regard, but not for the purpose of varying and nullifying its clear and positive provisions. (*Maltby v. Sumner,* 169 Kan. 417, 219 P. 2d 395; and *Oliver v. Nugen,* 180 Kan. 823, 308 P. 2d 132.)

If, in a case such as this, it becomes necessary to go beyond the written evidence of such grant or contract creating the account to

establish the intention of the grantor, the inquiry should be confined to the time the contract was entered into, without reference to subsequent events or circumstances, since it is only the intention of the grantor at the time of the creation of such account that is material. (See, *Brewer v. Schammerhorn*, 183 Kan. 739, 332 P. 2d 526.)

Under the foregoing rules evidence admitted by the trial court on behalf of the appellees, over objection, was inadmissible under the parol evidence rule, because the written contract creating the joint tenancy bank savings account was clear and unambiguous.

It has been held in the absence of pleading and proof of some species of fraud or mutual mistake in the procuring of a party's signature to a plain and unambiguous written contract, it must be enforced according to its terms, and neither pleading nor proof of a parol understanding at variance with such terms can be considered. (*Colt Co. v. Kocher*, 123 Kan. 286, 255 Pac. 48; and *Hazelton v. Chaffin*, 109 Kan. 175, 197 Pac. 870.)

It has also been held where a written contract is complete and free from ambiguity, and where neither fraud nor mutual mistake is pleaded or proved, parol testimony of a contemporaneous oral contract relating to the same matter is incompetent. (*Radebaugh v. Dillon*, 119 Kan. 492, 240 Pac. 406.)

The competent evidence before the trial court established the existence of a joint tenancy bank savings account in the Twin City State Bank of Kansas City, Kansas, which was created during the lifetime of John J. Heath, the decedent, in the names of John J. Heath and his daughter, Madena Wilt, as a survivorship account, all of which the trial court found. Such evidence clearly established the creation of the joint tenancy account in question by the coexistence of the four unities required. The tenants had one and the same interest; the interests accrued by one and the same conveyance; the interests commenced at one and the same time; and the property was held by one and the same undivided possession.

Accordingly, the appellant herein was entitled to judgment based upon the trial court's finding that a joint tenancy bank savings account with right of survivorship was created.

Here the trial court on its own motion asserted the trust theory. There was no request by the executrix to amend her petition pursuant to K. S. A. 60-215 (*b*), and the appellant objected to any such theory or evidence in support of it, since it would be at variance with the pleadings and admissions of the executrix as to the pleaded

and established contract. On this point we hold the trial court erred by injecting equitable issues into the case which were completely outside the pleadings and the evidence.

Our decision on the record here presented is consistent with the law in other jurisdictions on joint tenancy bank accounts.

The California Court of Appeals in the case of *In re Kellogg*, 41 C. A. 2d 833, 107 P. 2d 964 (1940), held that a written agreement creating a joint tenancy in a bank account could not be varied or defeated by evidence of an accompanying oral agreement establishing a trust in conflict with the unambiguous language of the written contract, except on a clear showing of fraud, undue influence, lack of consideration, or circumstances indicating that the instrument was not intended to become effective.

The Missouri Supreme Court in *Commerce Trust Co. v. Watts*, 360 Mo. 971, 231 S. W. 2d 817 (1950), while recognizing that under the Missouri statutes, joint accounts made payable to either or survivor, if not accompanied by an agreement between the parties, raise a rebuttable presumption of joint ownership of the deposit, held the parol evidence rule applicable where there was such an agreement. There the trial court found the joint account was set up for the convenience of the parties, and held the survivor was not entitled to the funds because it was not intended that the survivor have an interest in the funds, either legal or equitable. The court said:

"Conceding that the above deposit agreement was a valid contract between the depositors and the bank, respondent contends 'the parol evidence rule is inapplicable because the deposit agreement is neither a valid contract (as between the two depositors) nor a transfer of a present interest.' We cannot agree to that contention. . . . Under the circumstances here that writing did more than raise a mere presumption. It actually fixed the ownership of the account in the persons therein named (Crandall and Mrs. Watts) with attendant rights of survivorship. . . ." (p. 976.)

Further in the opinion the court said:

". . . As to these facts, however, where this contract was executed which so unequivocally and unambiguously reflects the entire engagement of the parties, and where the intention of the parties appears so crystal clear from the words they use in the contract, we cannot escape the conclusion that this contract and these facts present no recognized exception to the parol evidence rule. . . .

"Under the circumstances here neither parol evidence nor extrinsic circumstance was admissible to contradict or vary the intention of the parties expressed in their solemn contract. . . ." (pp. 979, 980.)

In *Cuilini v. Northern Trust Co.,* 335 Ill. App. 86, 80 N. E. 2d 275 (1948), the decedent opened several bank accounts with the defendant as codepositor, signature agreements being signed by them in each instance, and the court said:

"The contracts executed by the decedent and defendant state in clear and unequivocal language that the deposits are the joint property of decedent and defendant and that upon the death of either they shall go to the survivor. The rule has been repeatedly announced that, where there is no ambiguity in the terms used, the instrument itself is the only criterion of the intention of the parties. . . . Evidence of words or acts of the parties inconsistent with the plain terms of the contract is not competent, nor is the exclusive possession and control of the bank books decisive of the question of intent. . . .

. . . . . . . . . . . . . . . .

". . . We think the decisions of the Supreme Court of Illinois heretofore cited are in line with the weight of authority which holds that, in absence of fraud, duress, or mistake, intention of the decedent is to be deduced only from the terms of the contract. . . ." (pp. 90, 91.)

Other decisions hold where the intent with which a joint bank account is created is evidenced by a written agreement, the question of intention ceases to be an issue, and the court is bound by the agreement. (*In re Estate of Murdoch,* 238 Iowa 898, 29 N. W. 2d 177 [1947]; and *State Board of Equal. v. Cole,* 122 Mont. 9, 195 P. 2d 989 [1948].)

The judgment of the lower court is reversed.