No. 44,767

In the Matter of the Estate of Rachel J. Smith, Deceased. FLOYD M. SMITH, *Appellant*, v. JAMES DELMER BLUBAUGH, CLELLA EARLENE ZIMMERMAN, VELMA JEAN POLK, *Appellees*.

(427 P. 2d 443)

Opinion filed May 13, 1967.

*John H. Shaffer*, of Hutchinson, argued the cause, and *Abraham Weinlood, Bill R. Cole, D. Stewart Oswalt* and *Porter K. Brown*, of Hutchinson, were with him on the brief for the appellant.

*Morris H. Cundiff*, of Wichita, argued the cause, and *Dale M. Bryant, Garner E. Shriver, Glenn J. Shanahan* and *W. Sherm Timmons, Jr.*, of Wichita, were with him on the brief for the appellees.

The opinion of the court was delivered by

O'CONNOR, J.: This appeal arises out of a proceeding to determine the ownership of a savings account in The First National Bank of Hutchinson.

The over-all question is whether or not the appellant, Floyd M. Smith, is entitled to the balance of the account as a surviving joint tenant.

Rachel J. Smith died intestate on August 13, 1963, at the age of eighty-nine years, and Floyd, her son, was appointed administrator of her estate. The balance of the savings account was not included as part of the assets of the estate. The appellees, children of two of Rachel's predeceased daughters, filed written defenses to Floyd's petition for final settlement, alleging that (1) Rachel was incompetent at the time of her death, and several years prior thereto, and (2) the savings account was Rachel's sole and separate property, and Floyd, as administrator, should be required to include the balance of the account as a part of the estate. After a full hearing, the probate court found in Floyd's favor, holding the evidence was insufficient to show Rachel was incompetent, but that the evidence was sufficient to establish the account was owned by Rachel and Floyd in joint tenancy. The grandchildren appealed to the district court, and by agreement the case was submitted for trial upon a transcript of the proceedings in probate court. In a lengthy memorandum opinion the district court concluded that Rachel was mentally competent, and found:

". . . that the evidence is insufficient to establish a 'clear' intent on decedent's part to create a joint tenancy with right of survivorship in the savings account in The First National Bank. To the contrary, the court feels the signature card was given for convenience so that Floyd M. Smith could pay decedent's bills and handle her business.

"Accordingly, it is the decision of this court that the savings account in The First National Bank of Hutchinson, Kansas, in question herein, is a part of estate assets and an accounting of same should be made by the administrator."

From the judgment subsequently rendered, Floyd has appealed.

The appellees challenge Floyd's right to be heard on portions of his brief, claiming that certain points raised therein are clearly outside the scope of the formal statement of points filed in accordance with Rule No. 6 (*d*) of this court (194 Kan. xiv). We have thoroughly examined appellant's brief and are of the opinion that the points complained of by the appellees are reasonably encom-

passed within those enumerated in appellant's formal statement, all of which may be resolved into the sole contention that the district court erred in finding that a joint tenancy with right of survivorship in the savings account was not created, and that the balance of said account was a part of Rachel's estate. Since there has been no cross-appeal on the issue of Rachel's competency, we shall confine our attention to the single point raised.

A brief résumé of the evidence will focus the over-all question. On April 5, 1960, Rachel opened an individual savings account in The First National Bank of Hutchinson. Rachel signed a signature card, and the bank set up a ledger sheet and issued a passbook— all in her name. Thereafter, Anna Woddell, an employee of the bank, knowing that Rachel lived alone and was getting old, had several conversations with her about doing something with her account so she could have someone "take care of her in case she broke her arm or something happened to her." Mrs. Woddell also had a conversation with Floyd at a time when she thought Rachel "was needing some help to pay bills and things like that." On or about March 2, 1962, Floyd had a conversation with Mrs. Woddell in which he told her his mother needed care but he couldn't afford to pay her bills and "things like that," and if his mother had money, it should be used. At about that time Floyd's wife took Rachel to town, at her request, and left her at the bank. When Floyd's wife returned for Rachel, Mrs. Woddell accompanied Rachel to the car and told Floyd's wife that Rachel had signed a new signature card, and when Floyd came to town the next time, he was to sign it. At a later date Floyd signed the card. The pertinent portion of the signature card signed by Rachel and Floyd is as follows:

"JOINT ACCOUNTS

"We agree and declare that all funds now or hereafter in our name in The First National Bank, Hutchinson, Kansas, are and shall be our joint property and owned by us as joint tenants with right of survivorship, and not as tenants in common; and shall become the absolute property of the survivor. Each of the parties hereto authorizes the Bank to deposit to this account, any check or item made payable to either of us without our personal endorsement. Funds may be withdrawn by either of us, or the survivor, at any time. This contract shall be binding upon our heirs, administrators and executors."

Mrs. Woddell testified that it was the custom of the bank when signature cards were set up in "joint accounts" to explain to the people the effect of such an account, and that she was quite sure

she explained to Rachel what "a joint account consisted of." When Floyd signed the card he didn't read it, and knew only that it gave him the right to withdraw funds. Rachel and Floyd had never at any time discussed with each other the changing of the account, Floyd's name was not added to the bank ledger sheet or passbook, and the passbook remained in Rachel's possession until she became ill shortly before her death.

When the account was changed, it reflected a balance in excess of $12,000, all of the money having been contributed by Rachel. Thereafter, no deposits, except credits of interest, were made to the account. Beginning in February 1963, Floyd made six withdrawals before Rachel's death. The withdrawal slips, at the bank's direction, were signed "Rachel J. Smith, by Floyd M. Smith" or "Rachel J. Smith, Floyd M. Smith." The funds withdrawn were used to pay Rachel's medical expenses. At the time of Rachel's death $7,154.61 remained in the account.

According to Mr. Nation Meyer, president of the bank, the manner in which the account was handled was consistent with normal banking practices for a "joint account," and on March 2, 1962, when the account was changed, the signature card controlled the account, notwithstanding that only Rachel's name was on the ledger sheet and passbook, and withdrawals were made in the manner heretofore related.

Floyd urges that there was a contract entered into between Rachel and the bank which created a joint tenancy with right of survivorship wherein Floyd was a third party donee beneficiary, and that the court should have enforced the contract according to its terms rather than relying on parol evidence to infer an intent contrary to that expressed by the contract. The argument of the appellees, on the other hand, may be summed up in the words of the district court in its memorandum opinion, quoting from *Miller v. Higgins,* 188 Kan. 736, 366 P. 2d 257, in which it is stated:

" 'Regardless of the theory upon which the joint tenancy is sought to be established it ultimately will be resolved on the clarity with which the intent of the grantor is expressed. The intent of the grantor is basic and is derived clearly from the facts and circumstances of each case. In the instant case there does not seem to be any one thing other than the naked words which would import the creation of joint tenancy, and the meaning of those words is completely rebutted by the facts and circumstances evidencing intent, both at the inception of the account and at such times subsequent thereto as are pertinent. . . .' " (p. 740.)

While the presumption of joint tenancy with the right of survivorship as it existed at common law was abolished by statute in this state (see K. S. A. 58-501, comment of Judicial Council, 1939), this does not render ineffective or unlawful a contractual arrangement which confers equivalent legal rights and obligations upon the parties concerned. (*Malone v. Sullivan,* 136 Kan. 193, 14 P. 2d 647.)

Under G. S. 1961 Supp. [now K. S. A.] 58-501, a grant of personal property to two or more persons creates in them a tenancy in common with respect to such property, unless the language used in such grant makes it clear that a joint tenancy is intended; and under subsection (*a*) of the statute, where joint tenancy is intended, it may be created by transfer from an owner to himself and another person as joint tenants.

The signature card constituted a contract in writing between Rachel and the bank. No serious contention is made by the appellees that the language used was insufficient to create a joint tenancy with right of survivorship. The intention of the grantor (Rachel) is clearly indicated by the use of the "magic" words commonly regarded by our decisions as creating a joint tenancy. (*Spresser v. Langmade,* 199 Kan. 96, 427 P. 2d 478; *Simonich, Executrix v. Wilt,* 197 Kan. 417, 417 P. 2d 139; *In re Estate of Fast,* 169 Kan. 238, 218 P. 2d 184.) The fact that Floyd had no agreement with Rachel, and did not appear with her when the account was established, is of no real consequence. The legal significance of the contract entered into by Rachel and the bank was the creation of a joint tenancy bank savings account with the right of survivorship wherein Floyd was a third party donee beneficiary. In *Goeken v. Bank,* 104 Kan. 370, 179 Pac. 321, it was held:

"A person may avail himself of a promise made by a second party to a third for the benefit of the first, although the latter was not a party to it and had no knowledge of it when made." (Syl. ¶ 2.)

This principle of contract law has threaded its way throughout many of our decisions (*e. g., Weld v. Carey,* 122 Kan. 666, 253 Pac. 235; *Derby Oil Co. v. McPherson Gas Co.,* 142 Kan. 373, 46 P. 2d 872; *West v. Sims,* 153 Kan. 248, 109 P. 2d 479; *Haynes Hardware Co. v. Western Casualty & Surety Co.,* 156 Kan. 356, 133 P. 2d 574; *Holmes v. Kalbach,* 173 Kan. 736, 252 P. 2d 603). The contract being beneficial to Floyd, his acceptance thereof may be presumed. (*Wellman v. Knapp,* 126 Kan. 473, 268 Pac. 817.) Floyd's subse-

quent signing of the signature card, while perhaps required by the bank for its protection in the event of withdrawals by him from the account, added nothing to the validity or enforceability of the contract. (*Kelberger v. First Federal S. & L. Asso.*, 270 Wis. 434, 71 N. W. 2d 257.)

The appellees base their claim upon parol or extrinsic evidence from which they attempt to infer that Rachel intended only that the joint account be for convenience purposes rather than a true joint-tenancy account. Specifically, the appellees rely upon evidence that the change in the account was initiated by the bank, there was no discussion or agreement between Rachel and Floyd to create a joint tenancy account, Floyd was not present at the time Rachel established the account and did not understand the legal significance of the change in the account when he signed the signature card, Rachel kept possession of the passbook until shortly before her death, Floyd did not make any claim of ownership to the account until after Rachel's death and he had talked to his lawyer, and the bank did not add Floyd's name to the ledger or passbook.

The disposition of this case is controlled by our recent holding in *Simonich, Executrix v. Wilt*, supra, on analogous facts where similar contentions to those of the appellees were advanced and rejected. There, a father and his daughter, at the father's request, signed a signature card establishing a joint tenancy bank savings account with the right of survivorship. We held that such an account was created by the contract of the parties evidenced in writing after both the father and his daughter appeared before the vice president of the bank and fully discussed the matter, and that the intention of the grantor to create such an account was indicated by the contract which each of the parties thereto understood. The main factual distinction between that case and here is that the daughter accompanied her father to the bank at the time the account was created, was present throughout the discussion and was thoroughly familiar with the entire transaction; but as we have pointed out, this distinction does not affect the result here, since the grantor's intention, as evidenced by the terms of the contract, is the crucial factor. Like the instant case, the appellees in *Simonich* based their claim to the account upon parol evidence, collateral to the contract establishing the account, from which they sought to infer an intent on the part of the grantor contrary to that expressed in the contract. We held that such evidence, which had been

admitted by the trial court over objection, was inadmissible under the parol evidence rule to vary the plain and unambiguous terms of the written contract creating the joint tenancy account, and stated:

".  .  . in the absence of pleading and proof of some species of fraud or mutual mistake in the procuring of a party's signature to a plain and' unambiguous written contract, it must be enforced according to its terms, and neither pleading nor proof of a parol understanding at variance with such terms can be considered. (*Colt Co. v. Kocher,* 123 Kan. 286, 255 Pac. 48; and *Hazelton v. Chaffin,* 109 Kan. 175, 197 Pac. 870.)" (p. 424.)

Here, there is nothing to indicate from the record that Floyd objected to the introduction of any of the parol or extrinsic evidence. The parol evidence rule is one of substantive law and not merely a rule of evidence, and therefore, it must be adhered to, irrespective of whether or not proper objection is interposed at trial. (*Thompson Co. v. Foster,* 101 Kan. 14, 165 Pac. 841. Also, see *Brenn v. Insurance Co.,* 103 Kan. 517, 175 Pac. 383.)

The appellees make some argument in their brief of mutual mistake as between Rachel and Floyd, but on oral argument they candidly admit they are not claiming mutual mistake or fraud in the creation of the account as between Rachel and the bank.

Our decision in *Miller v. Higgins,* supra, on which the district court relied heavily in reaching its conclusion, was distinguished in *Simonich,* and the distinguishing facts therein noted are equally applicable to this case. Likewise, in *Simonich,* cases were cited and reviewed from other jurisdictions in which joint tenancy accounts were created in clear and unambiguous language, thus prohibiting the use of parol or extrinsic evidence to contradict or vary the · terms of the contract creating the account. (Also, see Annos. 149 A. L. R. 862 and 33 A. L. R. 2d 569.)

We hold that under the facts, a valid joint tenancy bank savings account was created by the clear and unambiguous terms of a written contract, and that the parol evidence rule precluded consideration of evidence relied on by the appellees that the account was created only for convenience purposes.

The judgment is reversed with directions to enter judgment for the appellant.