No. 45,073

Olen Edwards; Mae Shull; Olen Edwards, Administrator of the Estate of David A. Edwards, also known as D. A. Edwards, Deceased, *Appellants,* v. Millie E. Ledford; Millie E. Ledford, Administratrix of the Estate of David A. Edwards, also known as D. A. Edwards, Deceased, *Appellees.*

Olen Edwards; Mae Shull; Olen Edwards, Administrator of the Estate of David A. Edwards, also known as D. A. Edwards, Deceased, *Appellants,* v. Thomas Jean Edwards, Administrator of the Estate of Thomas C. Edwards, also known as T. C. Edwards, Deceased, *Appellee.*

(441 P. 2d 834)

Opinion filed June 8, 1968.

*William A. Buckles,* of Burlington, argued the cause, and *Philip R. Herzig,* of Burlington, was with him on the brief for the appellants.

*Carl C. Chase,* of Eureka, argued the cause, and *Carl W. Shewmaker,* of Eureka, was with him on the brief for the appellees.

The opinion of the court was delivered by

O'CONNOR, J.: This appeal arises out of proceedings instituted by plaintiffs (appellants) to determine the ownership of two bank savings accounts, neither of which was evidenced by any signed, written instrument.

The issue presented is whether or not the accounts constitute a part of the assets of the estate of David A. Edwards, also known as D. A. Edwards, deceased, or whether the defendants (appellees) are entitled to the balance in the accounts as surviving joint tenants.

The first account was established September 19, 1961, when D. A. Edwards and Millie E. Ledford, his daughter, went to the Citizens National Bank at Eureka, Kansas. While Mrs. Ledford waited in the lobby, Mr. Edwards advised the president of the bank, H. C. Hobbs, of his desire to establish a joint account with Mrs. Ledford whereby any money in the account would belong to his daughter if anything happened to him. Mr. Hobbs explained to Mr. Edwards that such a joint account would permit Mrs. Ledford to make withdrawals therefrom at any time after it was created. Mrs. Ledford was then called into Mr. Hobbs' office where Mr. Hobbs again explained to both Mr. Edwards and Mrs. Ledford that establishment of the joint account would make it possible for either of the two to withdraw the entire balance at any time during their lifetimes, and that the money remaining in the account would be the sole property of the survivor upon either's death. In response to Mrs. Ledford's inquiry of her father if this was his wish, Mr. Edwards replied, "Yes, that is the way I want it." Mr. Edwards then gave Mr. Hobbs some oil-run checks in the aggregate of $10,121.04, which had theretofore been Mr. Edwards' sole property, and Mr. Hobbs prepared a deposit slip for that amount, showing the names of the depositors to be "D. A. Edwards or Millie E. Ledford," and a passbook reciting "In Account with D. A. Edwards or Millie E. Ledford." No signature card was used.

Thereafter, Mrs. Ledford, having access to the passbook, withdrew interest payments from the account on three different occasions, leaving an account balance each time of $10,000, and deposited the monies to Mr. Edwards' individual account in the Eureka Federal Savings & Loan Association.

Following the death of her father on May 9, 1965, Mrs. Ledford withdrew the money, together with the accrued interest, from the joint account on January 20, 1966.

The second account was created March 28, 1962, at the First National Bank, Hamilton, Kansas, as the result of D. A. Edwards' telling his son, T. C. Edwards, and Mrs. Ledford that he wished to open an account with T. C. in the same way he had with Mrs. Ledford. On that day, upon instructions of D. A. Edwards personally, or of Mrs. Ledford acting for and on his behalf, a joint account in the names of D. A. or T. C. Edwards was established. As in the establishing of the first account, $10,000 in oil-run checks belonging solely to D. A. Edwards were delivered to Walker Ellis, president of the bank, who made out a deposit slip, naming as depositors "D. A. or T. C. Edwards," and issued a passbook reciting "In Account with D. A. Edwards or T. C. Edwards." Mr. Ellis explained to Mrs. Ledford and D. A. Edwards that T. C. would have the right to draw on the account at any time after its creation, and the money remaining in the account would be the sole property of the survivor upon the death of either of them. Again, no signature card was used.

T. C. lived with his father and had access to the passbook, which, like the book for the first account, was kept in a lockbox in the home of D. A. Edwards. Both Mrs. Ledford and T. C. had access to the key to the box.

Interest on the second account was withdrawn on July 5, 1963, and January 8, 1965, leaving a balance in the first instance of $10,000, and in the second, $10,249.98. Both withdrawals were paid to D. A. Edwards. Following D. A. Edwards' death, the money in the account, together with accrued interest, was withdrawn by T. C. Edwards on July 23, 1965.

Subsequently, two separate actions, which were consolidated for trial, were brought by Olen Edwards individually, and as co-administrator of the D. A. Edwards estate, and Mae Shull, both of whom are also children of the decedent, to have the accounts determined to be a part of the assets of said estate, on the ground that the money in the accounts was the sole and separate property of D. A. Edwards. The actions were defended on the ground that the accounts were joint tenancy accounts and the surviving joint tenants were entitled to the money remaining in each account.

The district court made findings of fact substantially the same as the facts above set out, and concluded that the establishment of the account in the Citizens National Bank of Eureka in the names of "D. A. Edwards or Millie E. Ledford" created in them a joint

tenancy with the right of survivorship; that upon the death of D. A. Edwards, Mrs. Ledford was and now is the owner of the entire fund remaining in the account; that the account established in the First National Bank of Hamilton in the names of "D. A. or T. C. Edwards" created in them a joint tenancy with the right of survivorship; and that upon the death of D. A. Edwards, T. C. Edwards was and now is the owner of the entire fund remaining in the account.

From the judgment entered in favor of the defendants, plaintiffs have appealed.

Shortly before the actions were filed, T. C. Edwards was adjudged incompetent, and guardians of his person and conservators of his estate were appointed to act for and on his behalf. T. C. died on February 21, 1967, during the pendency of this appeal, and the administrator of his estate has been substituted as a party defendant.

We deem the testimony of Mr. Hobbs and Mr. Ellis, presidents of the respective banks, relevant to the question before us. Mr. Hobbs testified he intended to create a joint tenancy account because that was what D. A. Edwards wanted. He merely followed the customary practice of the bank at that time in setting up such accounts. Normally, the bank used signature cards, but none was signed in this case. At all times thereafter the bank considered the Edwards-Ledford account as a joint tenancy account. Similarly, Mr. Ellis testified he intended to create a joint tenancy account when he was told to open a "joint account." At that time it was the customary practice of the bank to create such accounts by joining the names with the word "or." Signature cards were not required. Subsequent to the time the D. A. Edwards-T. C. Edwards account was established the bank acquired and now uses a stamp with the words "as joint tenants with right of survivorship and not as tenants in common," and had Mr. Ellis had such a stamp at the time the account was set up, he would have used it. Mr. Ellis always considered the account as a true joint tenancy account.

At the time the accounts in question were in existence, D. A. Edwards maintained a checking account in which the balance ranged from $11,000 to more than $50,000. Although not involved in these actions, D. A. Edwards had Millie Ledford deposit $10,000 of his money in the First National Bank of Madison, and he obtained a certificate of deposit payable to "D. A. Edwards and

Viola Mae Shull as joint tenants with right of survivorship and not as tenants in common." The money was subsequently withdrawn by Mr. Edwards prior to his death. There was evidence that Mr. Edwards was accustomed to making large gifts of property to his children. For example, in 1962 he made gifts totaling $231,175.86 on which he paid taxes of $47,972.91.

The appellants concede that although the evidence was conflicting, there was substantial, competent evidence to support the trial court's finding that when the two accounts in question were created, they were intended to be joint tenancy accounts with the right of survivorship. The thrust of appellants' argument on appeal is that the provisions of G. S. 1961 Supp. [now K. S. A.] 58-501 preclude the creation of joint tenancy bank accounts in the manner disclosed by this record.

In establishing a valid joint tenancy, the all-important factor is the clarity with which the intent of the grantor is expressed at the time the transaction is initiated. This principle is firmly impressed in our law by the provisions of 58-501, which state that a grant of personalty to two or more persons creates in them a tenancy in common with respect to such property unless the language used in such grant makes it clear that a joint tenancy was intended. Likewise, the principle is implanted in our decisions dealing with the creation of joint tenancy bank accounts. (*In re Estate of Smith,* 199 Kan. 89, 427 P. 2d 443; *Simonich, Executrix v. Wilt,* 197 Kan. 417, 417 P. 2d 139; *Miller v. Higgins,* 188 Kan. 736, 366 P. 2d 257; *In re Estate of Fast,* 169 Kan. 238, 218 P. 2d 184; *Spark v. Brown,* 167 Kan. 159, 205 P. 2d 938; *Asche v. Matthews,* 136 Kan. 740, 18 P. 2d 177; *Malone v. Sullivan,* 136 Kan. 193, 14 P. 2d 647, 85 A. L. R. 275.)

Joint tenancies as they existed at common law have never been favored in this state. The enactment in 1891 of chapter 203, § 1 (22-132), made that clear. The statute was held to have abolished joint tenancies and the doctrine of survivorship created by operation of law, but did not forbid joint tenancies and survivorship by negotiation or contract of the parties concerned. (*Withers v. Barnes,* 95 Kan. 798, 149 Pac. 691; *Malone v. Sullivan,* supra; *Bouska v. Bouska,* 159 Kan. 276, 153 P. 2d 923; *Spark v. Brown,* supra. Also, see Anno. 85 A. L. R. 282.)

In 1939 the legislature enacted chapter 181, § 1 (G. S. 1939 Supp. 58-501) as part of a new property act. The statute was 22-132 redrafted. The judicial council rewrote the old statute to clarify

it and make the new law applicable to personal property as well as to real property, and to harmonize the new statute with the previous decisions of this court. (*Bouska v. Bouska,* supra; *Spark v. Brown,* supra. See article by Mr. Justice Harvey in the May 1939 issue of The Journal of the Bar Association of the State of Kansas, Vol. 7, No. 4, p. 377.)

An analysis of the cases dealing with the creation of joint tenancies in personalty, and particularly bank accounts, reveals little or no change was wrought by 58-501—the intent of the grantor remained the common denominator. This was true, whether the decision was governed by old 22-132 or new 58-501.

One of the first cases involving a bank account was *Malone v. Sullivan,* supra, in 1932. The facts were strikingly similar to those of the instant case. Amy Malone, with her sister Annie Williams, went to the bank and told an official she wished to open a savings account in such a way that if anything happened to her, Annie could get the money. All parties, including the banker, orally agreed that the account should be opened as a joint account with the right of survivorship. The banker made out a passbook in the names of "Amy Malone or Annie Williams." Although both Amy and Annie signed a signature card, its terms are not disclosed, and the court apparently attached no significance to that fact. Subsequently, Amy died, and suit was filed, claiming the account as an asset of her estate. In holding the arrangement with the bank to be essentially contractual, and that Annie was the owner of the account, the court stated:

"The statute, R. S. 22-132, which abolished joint tenancy and survivorship as they existed at common law, does not render unlawful a contractual arrangement which confers and defines equivalent legal rights and obligations among the parties concerned." (Syl. ¶ 1.)

*Malone* was followed in another savings account case in *Asche v. Matthews,* supra, and was cited with approval in *Corson v. Oakley,* 138 Kan. 520, 27 P. 2d 290.

The appellants acknowledge the import of the decision in *Malone* is against them, but urge that the case was decided under 22-132, then in effect, and is no longer controlling, because 58-501 requires *written* language clearly indicating that a joint tenancy was intended.

Let us consider several of our decisions arising since the enactment of 58-501.

A savings account was found not to have been established in joint tenancy in *Spark v. Brown,* supra. In distinguishing the *Malone* decision, this court emphasized there was a complete absence of evidence of any agreement, oral or written, between the parties.

A like result was reached in *Miller v. Higgins,* supra, where the court considered a checking account with the names of A or B "and to the survivor of them upon the death of either" appearing on the account ledger sheet. As a matter of practice the bank did not require signature cards, and considered the ledger primary evidence of ownership. After noting there was no express agreement between the deceased depositor and the bank as to the ownership of the account, except that which might be implied from the title of the account itself, the court concluded:

"Regardless of the theory upon which the joint tenancy is sought to be established it ultimately will be resolved on the clarity with which the intent of the grantor is expressed. The intent of the grantor is basic and is derived clearly from the facts and circumstances of each case. In the instant case there does not seem to be any one thing other than the naked words which would import the creation of joint tenancy, and the meaning of those words is completely rebutted by the facts and circumstances evidencing intent, both at the inception of the account and at such times subsequent thereto as are pertinent. . . ." (p. 740.)

The opposite conclusion was arrived at in *In re Estate of Fast,* supra, which had to do with a savings and loan account in the names of a husband and wife. The account application signed only by the husband, the certificate, and the passbook each carried the account as "joint tenants with the right of survivorship and not as tenants in common." This court held it was clearly the intention of the investor and the loan association to create a joint tenancy account.

As a result of our two most recent decisions, *Simonich, Executrix v. Wilt,* supra, and *In re Estate of Smith,* supra, there is no question that according to contract principles, a joint tenancy account with right of survivorship is created when the parties use an account signature card, signed by the depositor, containing the "magic words" commonly regarded by our decisions as establishing a joint tenancy—as joint tenants with right of survivorship and not as tenants in common. The use of this language makes it clear that joint tenancy is intended and meets the requirements of 58-501 to the letter. In such case, the provisions of the signature card constitute

a contract in writing, enforceable according to its terms, and a parol understanding at variance with such terms is inadmissible in the absence of fraud or mutual mistake. Extrinsic evidence relating to the facts and circumstances existing prior to and contemporaneously with the execution of the contract is admissible only if the language used is uncertain or ambiguous, in order to clarify the intention of the grantor at the time of the creation of the account.

As distinguished from *Simonich* and *Smith*, we have here accounts which in each instance were established in the names of the depositor and another without the use of a written instrument signed by the depositor. Nevertheless, each of the accounts was established pursuant to a distinct oral understanding or agreement between the bank and the depositor that it would be a joint tenancy account. Does proof of such an agreement in parol under these circumstances meet the requirement of 58-501 that the "language" used must make the intention clear? We are of the opinion it does. The 1955 amendment enlarged the original provisions of the statute and specifically made it applicable to all estates in joint tenancy theretofore or thereafter created in personal as well as real property. Our decisions even before the amendment made it plain the statute applied to bank accounts established in the names of two or more individuals. The provisions of 58-501 neither expressly nor impliedly prohibit oral grants of personalty. We discern nothing therein whereby the legislature sought to destroy the impact of our earlier cases, including *Malone*, holding that a joint tenancy account may be created by contractual arrangement. The statute only reemphasizes what has been said in our decisions all along: the terms of the contract of deposit must clearly indicate that a joint tenancy was intended. The words "clear" and "clearly" have a positive and well-defined meaning. (See, *State, ex rel., v. Kirchner*, 182 Kan. 622, 322 P. 2d 759; *Jackman v. Development Co.*, 106 Kan. 59, 187 Pac. 258.) The result is that when an account is opened in the names of A or B without the use of an instrument in writing signed by the depositor, 58-501 does not preclude proof by parol evidence of a joint tenancy agreement between the depositor and bank.

The manner in which the names appear on the accounts in this case—A or B—was determined by the bank officials in compliance with their customary practice of creating joint tenancy accounts at that time. Where an account is established in the names of A or B, the bank is protected in paying the money to either of the persons

named (G. S. 1949 [now K. S. A.] 9-1205; *Miller v. Higgins,* supra; *Spark v. Brown,* supra; *Malone v. Sullivan,* supra); but such language alone is of no contractual significance insofar as it relates to the determination of the ownership of an account as between the persons whose names appear thereon. Even as a written memorandum of some oral agreement or arrangement pursuant to which the account was established, the title is inconclusive as to the true intention of the parties or the terms of any agreement, and, of necessity, resort must be had to parol evidence.

Our conclusion that in the absence of a signed signature card or agreement containing language that the depositor clearly intended to create a joint tenancy account, parol evidence is admissible to show such an agreement, is supported by respectable authority from other jurisdictions (Annos. 149 A. L. R. 862, 33 A. L. R. 2d 569; 10 Am. Jur. 2d, Banks § 369), including our sister state of Oklahoma (*Hendricks v. Grant County Bank,* 379 P. 2d 693 [certificate of deposit]; *Dyer v. Vann,* 359 P. 2d 1061 [investment share certificates]; *Clift v. Grooms,* 331 P. 2d 382 [bank accounts]).

We hold that the requirement of 58-501 is satisfied where an account is set up in the names of "A or B" pursuant to an oral agreement between the depositor and bank, the terms of which agreement clearly disclose that the depositor intended that a joint tenancy account be established. It follows that the trial court's conclusion, that the two accounts in question were joint tenancy accounts with the right of survivorship, must be sustained.

Appellants make a point that the creation and continued existence of a joint tenancy requires four unities: (1) unity of interest, (2) unity of title, (3) unity of time, and (4) unity of possession; and that unity of interest and unity of possession are lacking here. The identical argument was advanced and rejected in *Simonich,* supra. What we said there is controlling here. We find evidence that Mr. Edwards intended to create a present interest in himself and Millie when the account was established. The same may be said regarding the "D. A. or T. C. Edwards" account. In each instance Mr. Edwards was fully cognizant of the fact that his daughter or son could draw against the respective accounts any time during his lifetime, and upon his death the balance in each account would be the property of the survivor. Both Millie and T. C., along with their father, had access to each of the passbooks

to the respective accounts. Under all the circumstances, each of the unities requisite to the creation of a joint tenancy was present.

Appellants further assert the evidence established a confidential relationship between Millie and her father, and that the appellees failed to sustain their burden of proving that no undue influence, fraud or duress led to the establishment of the accounts. The record fails to reveal this point was ever urged in the lower court. Under such circumstances, the matter is not properly here for review. Despite the procedural deficiency, we have thoroughly examined the appellants' argument in light of *Cersovsky v. Cersovsky*, 201 Kan. 463, 441 P. 2d 829, and find it completely without merit. Other contentions advanced by the appellants have also been considered and found to be unavailing.

The judgment is affirmed.