No. 45,860

Mary K. Boxberger, *Appellee*, v. Palmer Cotten, Executor of the Estate of J. Ben Boxberger, Deceased, *Appellant*.

(479 P. 2d 869)

Opinion filed January 23, 1971.

*Rex L. Culley*, of Russell, argued the cause, and *John C. Woelk*, of Russell, was with him on the brief for the appellant.

*Charles Boyle*, of Russell, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Schroeder, J.: The question presented by this appeal is whether an antenuptial agreement between a decedent and his surviving spouse is void as against public policy.

J. Ben Boxberger of Russell, Kansas, died testate on the 24th day of April, 1968, survived by his widow, Mary K. Boxberger. He had two adult sons and four adult daughters, all of a previous marriage. She had previously been married, had adult children by the previous marriage, and was possessed of an estate left by her prior deceased husband.

The will of J. Ben Boxberger, the decedent, was offered and

admitted to probate. The widow's consent did not appear on the decedent's will. Upon notification to the widow of the admission of the will to probate, she renounced the will and filed her election to take under the laws of intestate succession. Included in her renunciation of the will was a disavowal of an antenuptial agreement executed by the decedent and herself. The antenuptial agreement was attached and contained a statement of her consent to the decedent's will. She prayed to be permitted to take under the laws of intestacy and that the marriage settlement agreement be held void for fraud, lack of independent advice, lack of knowledge of the decedent's property and inequity. The executor filed defenses, objections and an answer to the renunciation.

The matter was transferred to the district court and on the foregoing pleadings, together with a stipulation as to the admissibility of certain documentary evidence, the case was tried.

The decision of the district court was confined to a consideration of the antenuptial agreement. Certain evidentiary facts not in dispute were accepted by the trial court in reaching its decision and serve to give the background of this litigation.

J. Ben Boxberger and Mary K. Steinert were a widower and widow in 1955. He was 57 and she was 58 years of age. They had lived in the same community, and both were from farm families. Both had about the same education, she having attended school through the sixth grade and he through the fourth grade. In late 1955 they began to see each other socially and in December, 1955, they discussed marriage. In January, 1956, she accepted a diamond ring after further discussion of marriage, whereupon they executed the antenuptial agreement in question. They were married March 11, 1956, and lived together until J. Ben Boxberger's death on the 24th day of April, 1968.

In pertinent part the testator's will contained two provisions relating to Mary, his widow. Paragraph Fourth acknowledged Mary's ownership of certain furniture in their home in Russell, and in addition he bequeathed to her all his separately owned household goods, furniture, fixtures and the contents of the home.

Paragraph Eighth of the will reads:

"I have heretofore made provision for my wife, Mary K. Boxberger, should she survive me, by deeds executed by us, and in said deeds have reserved the income, use and benefits of the lands included in said deeds, for my wife during her lifetime, and have by these deeds fully complied with all things required to be done by me under the terms of our antenuptial agreement

dated March 8, 1956, insofar as said agreement pertains to the establishment of life estates in lands, and have by such deeds made adequate provision for the support and comfort of my wife during the remainder of her lifetime, and therefore make no further provision herein for the benefit of my wife, Mary K. Boxberger."

The principal remaining bequests and devises were of an eighty-acre tract in Greeley County, Kansas, to four daughters of the testator; the devise of another eighty acres in Greeley County to a son for his life with remainder to his children; and the residuary clause distributing the balance of his estate to his six children, naming them.

The antenuptial agreement referred to in paragraph Eighth, which is the subject of this litigation, provided in part that a marriage was shortly to be solemnized between them; that each owned real estate, interests in real estate and personal property; and then stated:

"AND WHEREAS, the parties desire to contract and agree for the separate ownership and management of their respective properties, and as to the rights and claims of each in and to the property, of the other, *upon the termination of such marriage relation—in case of death.*" (Emphasis added.)

Further, the parties agreed "in consideration of said intended marriage, the continuance thereof, and the promises and agreements hereinafter contained," as follows:

"SECOND PARTY [J. Ben Boxberger] AGREES:

"1. That on the first day after the solemnization of such marriage between them he will pay to First Party the sum of One Thousand Five Hundred Dollars ($1,500.00) which sum shall become and remain the sole, separate and absolute property of First Party forever.

"2. That *if First Party shall survive him as his widow, he will devise to her by his Last Will and Testament for the term of her natural life,* or for so long as she shall remain the widow of Second Party, the following described real estate and personal property, to-wit:" (Emphasis added.)

(*a*) A residence in the city of Russell with oil runs for her life.

(*b*) Eighty acres in Greeley County, Kansas, the oil runs to be shared with remaindermen.

(*c*) One hundred sixty acres in Russell County, the oil runs to be shared with remaindermen.

(*d*) Furniture, fixtures, household goods, etc., in the residence set out at (*a*) above.

(The legal descriptions of the foregoing properties here involved are omitted for the purpose of brevity.)

3. The decedent disclaimed all interest in the present or future acquired property of Mary.

The first party (Mary) agreed:

1. To disclaim any interest in the decedent's present or future acquired property except as provided above.

2. To consent to decedent's will, when required, if the will made the provision set out above for her, or if she failed or refused to do so then her execution of the antenuptial agreement was to constitute her consent.

Both agreed that each would be independent of the other regarding the property of the other, consistent with the agreement, then owned or later acquired, as if the proposed marriage had not taken place.

Both agreed that on the death of either of them the survivor would not have, and would not assert, any claim, interest, estate or title under the laws of Kansas because of survivorship in the realty or personalty of the decedent, including the rights granted under the laws of descent and distribution and the homestead and surviving spouse allowances. The survivor relinguished all interest, distributive share, estate or title in the property of the decedent and agreed upon demand to execute the necessary releases or disclaimers. Each agreed to execute deeds or conveyances or other instruments at the request of the other during the marriage.

Each agreed that the antenuptial agreement, signed and witnessed, should be deemed to be an adequate, full and complete consent to the will of the other.

This agreement was dated March 8, 1956, was signed by the parties and was witnessed the same date.

A supplement to the antenuptial agreement dated March 9, 1956, relating to the payment of taxes on the lands to be devised to the intended wife during the administration of the husband's estate and thereafter, was executed by the parties and witnessed by the same persons who witnessed the execution of the original agreement.

It is unnecessary for purposes of our decision herein to set forth the numerous grounds upon which the appellee attacked the will of the decedent and the antenuptial agreement. Among them was a charge of fraud.

The executor objected to the renunciation of the antenuptial agreement, contending it was a valid binding agreement, and among other things, that the parties during the decedent's life recognized the existence and validity of the agreement, separately managed their properties, gave effect to the agreement and acted in reliance, and not in derogation thereof. The executor also alleged the decedent, during his life, fully performed the antenuptial agreement and it was an executed, not executory, agreement.

The parties stipulated as to various exhibits consisting of documentary evidence. Among them was a canceled check showing the payment of $1,500 cash by the decedent to the appellee; the conveyance of a life estate in three parcels of real estate owned by the decedent to the appellee, and seven deeds joined in by the appellee, conveying real estate owned by the decedent to his various children. The parties did not, however, stipulate to the competency and materiality of these exhibits as to the issues in the case.

The district court heard considerable evidence. Approximately one hundred pages of testimony are presented in the record on appeal to this court pertaining to the various allegations set forth by the appellee attacking the antenuptial agreement. The trial court in making its decision announced that it had considered the stipulations and all of the evidence and the entire record of the case, and then made "the following findings, rulings and judgment from the evidence and the record in the case.

"No. 1

"The written stipulations executed by counsel on both sides and filed October 9, 1968, is made a part of the Court's findings.

"No. 2

"There are two central issues for the Court's determination:

"(*a*) Do the terms of the ante-nuptial agreement (Defendant's exhibit No. 1) encourage acts to cause separation of the parties to the marriage, and act to cause divorce, thus rendering the ante-nuptial agreement invalid and unenforceable as against public policy? See *Neddo v. Neddo*, 56 Kan. 507, which is cited and discussed with approval in numerous cases since, and including 154 Kan. 546, and page 552, and as late as *In re Estate of Cooper*, 195 Kan. 174 at page 179.

"(*b*) Was the ante-nuptial agreement, (Defendant's exhibit No. 1) fairly and understandably made, just and equitable in its provisions, and not obtained by fraud or over-reaching? See *In re Estate of Cantrell*, 154 Kan. 546.

"No. 3

"With reference to the first question at issue, the ante-nuptial agreement on page one states:

" 'Second Party (J. Ben Boxberger) Agrees:

" 'That if First Party (plaintiff) shall survive him as his widow, he will devise to her by last will and testament for the term of her natural life . . . etc,'

and then proceeds to set out the gifts to the First. Party Mary K. Boxberger. Thus all of the gifts by the Second Party except $1,500.00 in the ante-nuptial agreement are subject to, and are conditioned upon this provision, namely, that she not divorce him. This provision which is a central and substantial pecuniary gain to the Second Party, J. Ben Boxberger, in a divorce by his wife; and creates an incentive to cause a divorce. The Court finds this provision in the ante-nuptial agreement renders the contract void and unenforceable and against public policy from its beginning. Although divorce did not occur, there is evidence the contract was the occasion of considerable marital difficulty.

"Because of this finding the question (b) in the issues mentioned above is moot.

"No. 4

"The ante-nuptial agreement (defendant's exhibit 1) being void and unenforceable, is not a bar to an election by plaintiff to renounce the decedent's will and take under the laws of Kansas pertaining to descent and distribution.

"No. 5

"The Court finds that the election of plaintiff, Mary K. Boxberger, to take under the laws of Kansas of intestate succession and not under the will of her deceased husband, J. Ben Boxberger, should be allowed."

Judgment was entered by the trial court in accordance with its findings.

The trial court's finding that the terms of the antenuptial agreement encourage acts to cause separation of the parties to the marriage and act to cause divorce, thus rendering the antenuptial agreement invalid and unenforceable as against public policy, narrows the issue on appeal.

To determine whether the trial court was correct in its decision on that issue it must be assumed the antenuptial agreement was properly executed, that it was the agreement of the parties, that it was in the form they desired it to be, and was in fact their complete agreement.

In our opinion the trial court's conclusion that the antenuptial agreement is void on the ground it "creates an incentive to cause a divorce" is erroneous. The trial court's reasoning was based upon the proposition that the consideration of J. Ben Boxberger, except for the $1,500 in the antenuptial agreement, was subject to and

conditioned upon the proviso that "she not divorce him." There is absolutely nothing in the antenuptial agreement pertaining to divorce and there is no ambiguity in the contract. The parties contracted with respect to their properties, "upon the termination of such marriage relationship in case of death." This was the primary proviso for the entire contract. The clause subsequently used in the contract—"if First Party shall survive him as his widow, he will devise to her by his Last Will and Testament for the term of her natural life"—is consistent with the foregoing premise in the contract. The operative words relating to the devise by the decedent are "if First Party [Mary] shall survive him as his widow."

The only limiting words in the agreement are that Mary survive the decedent as his widow. On the facts of this case she did survive him. Ambiguity results from the use of words capable of two or more meanings. An agreement conditioned upon a single fact, survival as widow, means just one thing—that the parties be married at the death of the husband. On the facts of this case they were married upon the death of J. Ben Boxberger.

The trial court's conclusion that the agreement of the parties would control a settlement of their property rights in the event of divorce, and that the decedent had a substantial pecuniary benefit in the procurement of a divorce, is unfounded. The parties to the antenuptial agreement here in question made no agreement whatever concerning property rights in the event of divorce. The only logical construction of the contract is that the property rights of the parties would be determined by the court in a divorce proceeding without reference to the agreement, since it dealt only with property rights in the event of death. The contract created no obligation or undertaking for either party in the event of divorce. Neither party agreed to do, or not to do, any act, nor did either party waive any right in the event of a divorce.

Generally speaking, antenuptial contracts are not against public policy. The leading case in Kansas is *Hafer v. Hafer*, 33 Kan. 449, 6 Pac. 537. The court there said:

"It would seem from the authorities, that agreements of this kind are generally looked upon by the courts with favor, and are to be liberally interpreted with a view of carrying out the intentions of the persons engaging in them. . . ." (p. 459.)

This rule has continued in a long and unbroken line of cases, and

has been expressed recently in the case of *In re Estate of Johnson*, 202 Kan. 684, 452 P. 2d 286. That case grew out of an attempt by the surviving spouse of the decedent to void the enforcement of an antenuptial agreement. The applicable rules of construction were there discussed by the court as follows:

"If a contract is clear and unambiguous, which we believe this agreement is, the terms thereof must be construed in such manner as to give effect to the intention of the parties at the time they entered into the contract, and this must be determined from the four corners of the instrument itself. (*Wiles v. Wiles*, 202 Kan. 613, 452 P. 2d 271; *Kittel v. Krause*, 185 Kan. 681, 347 P. 2d 269.) Words cannot be read into the agreement which impart an intent wholly unexpressed when it was executed. (*Mays v. Middle Iowa Realty Corp.*, 202 Kan. 712, 452 P. 2d 279.) The result is that where, as here, there is no fraud or mutual mistake, a plain and unambiguous written contract must be enforced according to its terms, and the rights of the parties are governed by the terms of the contract without the aid of parol evidence. (See, *In re Estate of Smith*, 199 Kan. 89, 427 P. 2d 443.)" (pp. 689, 690.)

The trial court's consideration of testimony showing discord between the parties to the agreement in deciding the antenuptial agreement to be invalid was unwarranted. (*In re Estate of Smith*, 199 Kan. 89, 427 P. 2d 443.) The trial court's decision, however, makes it clear that the evidence directed to the issues raised by the pleadings was not considered. This is indicated by the trial court's acknowledgment that the issues stated in its finding No. 2 (*b*) were moot.

The antenuptial agreements in *Neddo v. Neddo*, 56 Kan. 507, 44 Pac. 1, and *In re Estate of Cooper*, 195 Kan. 174, 403 P. 2d 984, are in no way similar to the antenuptial agreement here under consideration. These cases are entirely dissimilar factually.

Counsel for the appellee argues the contract here is under attack on the grounds that it was contrary to public policy, and in arriving at the answer to this question the court is bound by all the evidence surrounding and attending the execution of such written contract. (Citing *In re Estate of Garden*, 158 Kan. 554, 148 P. 2d 745.)

In this respect counsel for the appellee has confused the two central issues recognized by the trial court in its finding No. 2.

The *Garden* case holds that "Parol evidence is admissible to show the facts and circumstances under which the antenuptial agreement and the will were executed." (Syl. ¶ 2.) This rule must be interpreted in the light of the facts which gave rise to its pronouncement. There the issue to be determined by the court was: What

was the antenuptial agreement? The antenuptial pact and the antenuptial will were executed by the contracting parties before their marriage. After the marriage the husband made another will which varied materially from the one he had executed on the eve of his marriage. On the issue presented the court held it was proper to hear parol evidence concerning the circumstances under which the two documents were executed; and that the antenuptial pact and the antenuptial will should be read and construed together as complementary instruments constituting but one agreement of the betrothed parties.

In the instant case the issue determined by the trial court necessarily assumed the antenuptial agreement, embraced in one document and admitted by both parties, was the complete agreement between the parties. Under these circumstances the rule in *Garden* has no application.

Here, having determined that it was improper to resort to extrinsic evidence to interpret the unambiguous antenuptial contract, and that the antenuptial contract was not void as against public policy, the trial court should have given full consideration to the issues raised by the pleadings, the evidence pertaining thereto, and made findings and conclusions based on such issues. These were the issues the trial court found to be moot.

In view of our determination that the antenuptial agreement was not void as against public policy, the trial court must be reversed and the case remanded for a new trial to determine the issues raised by the pleadings.

By reason of the judicial redistricting in Kansas, effective January 13, 1969, (L. 1968, Ch. 385; K. S. A. 1970 Supp. 4-221) the district court of Russell County has been transferred from the Twenty-third Judicial District to the Twentieth Judicial District of Kansas. It is directed that the issues to be determined on remand of this case be heard by a trial judge of the Twentieth Judicial District presently charged with the determination of cases in Russell County.

The judgment of the lower court is reversed and the case is remanded for further proceedings in accordance with the foregoing opinion.